THE COMMITTEE ON LEGAL ETHICS

OF THE WEST VIRGINIA STATE BAR

*v.*

RICHARD F. PENCE, *a Member*

*of the W. Va. State Bar*

(No. 13579)

Decided December 20, 1977.

Rehearing Denied February 13, 1978.

---

*Robert B. King and Rebecca A. Betts* for complainant.

*Donald R. Wilson* for defendant.

PER CURIAM:

This is a proceeding for disciplinary action against Richard F. Pence, a suspended member of the West Virginia State Bar, instituted by the Committee on Legal Ethics of the West Virginia State Bar, pursuant to the provisions of Part D of Article VI of the State Bar's By-Laws, wherein the Committee recommends annulment of respondent's license to practice law and prays for reimbursement to the State Bar for its actual and necessary expenses incurred incident to this proceeding.

In *Committee on Legal Ethics v. Pence,* ____ W.Va. ____, 216 S.E.2d 236, (1975), this same respondent had his license to practice law in this state suspended for a period of one year, effective July 1, 1975, based on full, clear and preponderating evidence that respondent had commingled the funds of his client with his own, that he had failed to pay over promptly on demand the funds of his client, and that he had submitted to the Committee in the course of its investigation a misleading bank deposit slip.

In October of 1976, the respondent filed a petition for reinstatement as required by the By-Laws of the West Virginia State Bar. The Ethics Committee made a preliminary investigation with regard to reinstatement and recommended that reinstatement be denied pending full consideration of ten complaints against the respondent pending before the Committee.

Following a hearing, this Court on February 15, 1977, ordered that respondent's license to practice law be restored on July 1, 1977, provided the Ethics Committee did not institute a proceeding in this Court seeking disciplinary action, and provided respondent by that date was not convicted of a criminal offense in the Circuit Court of Wood County. On June 29, 1977, the Ethics Committee instituted this disciplinary proceeding against respondent averring multiple violations of the Code of Professional Responsibility.

The first two counts of the four count complaint allege that respondent failed to promptly pay over on demand moneys owing and due two of his clients in violation of DR 9-102(B)(4); that respondent commingled the funds of these two clients with his own in violation of DR 9-102(A); and that respondent engaged in conduct in regard to these clients involving dishonesty, fraud, deceit or misrepresentation of violation of DR 1-102(A)(4).

Count three of the complaint alleges the same violations as the former two counts and, in addition, alleges that respondent intentionally prejudiced one Hallie Varner in her capacity as Committee for Pearl Skip-

worth, Incompetent, in violation of DR 7-101(A)(3); that he knowingly failed to disclose what he was required by law to reveal in violation of DR. 7-102(A)(3); that he knowingly made false statements of fact in violation of DR 7-102(A)(5); that he counseled and assisted his client in conduct known to be illegal in violation of DR. 7-102(A)(7); and that he engaged in conduct which was both illegal and contrary to the disciplinary rules of the profession in violation of DR 7-102(A)(8).

We shall first briefly summarize the substance of the evidence presented as to the first three counts of the complaint; however, count four of the complaint and the evidence adduced thereon will not be discussed or reviewed for reasons which will be discussed later in this opinion.

The record as to count one shows the respondent was employed under a contingent fee contract to provide legal services in connection with a claim for damages resulting from personal injuries sustained in an automobile accident. Respondent filed an action on behalf of his clients and negotiated a settlement resulting in the issuance of a check and a bank draft, both of which were made jointly payable to respondent and his clients. When the bank draft was endorsed by his clients and turned over to respondent, he falsely advised that there would be a delay of approximately twelve to fourteen days from the time the draft was deposited in a bank until the funds would be available to pay them their share of the settlement as allocated under the employment contract. Shortly thereafter, the respondent deposited the bank draft in his account titled "Richard F. Pence, Attorney-at-Law," thereby commingling the funds of his client with his own. Although the funds were immediately available for payment to his clients, no payment was made within the two-week period and, in fact, respondent's secretary informed one of the clients that more time would be required before payment could be made. During the two-week period, respondent wrote a check on the account in question for the apparent purpose of making payment to the Internal Revenue

Service, thereby reducing the balance in the account below the amount necessary to pay the clients their share of the settlement. After the two-week period, the clients made numerous long-distance telephone calls over the next six or seven weeks seeking payment of their money without success. It was only after respondent's clients threatened to file a grievance with the Ethics Committee that respondent made any payment, and then he made only a partial payment. Full payment was not made until some three weeks later, yet even then payment was made by a check post-dated two days to allow respondent time to make deposits so that there would be sufficient funds available for payment. Respondent finally made sufficient deposits to cover the check two days after the date on the already post-dated check, and some ten weeks after the date when the money was first available for payment.

The evidence relating to count two reveals that respondent entered into a contingent fee contract with the administratrix of an estate to provide legal services in connection with a claim for damages for wrongful death. Respondent filed suit, and negotiated a settlement at which time the bank draft, issued to respondent and client, was endorsed by the client and turned over to respondent. The client instructed the respondent to retain the funds until she determined how the money should be divided among her minor children Shortly thereafter, respondent deposited the bank draft in his personal account thereby commingling the funds of his client with his own. After a short period of time, respondent wrote three checks against this account reducing the balance far below the amount belonging to the client, thereby using his client's funds for his own personal benefit.

Some two years after respondent had received the settlement and used it for his personal benefit, respondent caused his client to execute an agreement whereby she irrevocably entrusted respondent with her share of the settlement to be held, invested, and distributed for the duration of her children's minority. This agreement au-

thorized and directed respondent to create separate and equal accounts for each of her children; however, respondent never established such accounts. Subsequently, respondent's client employed a second attorney who immediately served on respondent a request for accounting and disbursement directing that all funds previously entrusted to him be paid immediately. Three months later, after numerous additional demands for payment had been made, including the threat of a civil action and an Ethics Committee complaint, respondent made restitution. Although interest was paid from the date of the trust agreement, respondent paid no interest for the two-year period between his initial receipt of his client's funds and the date the agreement was consumated. Respondent paid the administratrix by endorsing over a bank draft made payable to him for legal services rendered to another client.

The record to count three indicates respondent was employed to represent an individual who had been appointed as Committee for her sister who had been declared incompetent. In the course of this representation, respondent assumed the management of several assets belonging to the incompetent family member and prepared and filed an appraisement along with four separate accountings of the assets with the Commissioner of Accounts. The assets included an inheritance in the form of a bank draft made payable to respondent's client serving as Committee. The respondents then caused the client to endorse over to him the bank draft. Contrary to his statements filed with the Commissioner of Accounts, respondent did not deposit the bank draft in the account of the Committee. Apparently, these monies were improperly used by respondent for his personal benefit.

The respondent also caused a second check to be endorsed over to him which was not put into any Committee account, despite his having represented to do so in an accounting filed with the Commissioner of Accounts. Thereafter, respondent learned that the incompetent had three savings accounts in a local bank. Respondent then caused the monies in these accounts to be paid

over to him in the form of two bank money orders which he immediately deposited in his own personal checking account, thereby commingling his funds with those belonging to the Committee. Actually, in both cases he retained a portion of the funds for his personal use and benefit. Thereafter, the respondent filed two false accountings with the Commissioner of Accounts. After respondent's client resigned as Committee, a successor was appointed who indicated he would file suit against respondent, his client, and his client's surety unless respondent promptly accounted for all monies belonging to the Committee which he had misappropriated in his capacity as counsel. A short time later, respondent made restitution of the funds, one portion of which he had converted approximately nine years earlier.

The record in this proceeding warrants the finding and conclusion that each of the charges contained in the three counts of the complaint has been proved by full, clear and preponderating evidence. The Ethics Committee has thus met the burden of proof required for disciplinary action. *Committee on Legal Ethics v. Mullins*, _____, W.Va. _____, 226 S.E.2d 427 (1976); Syl. Pt. 1, *Committee on Legal Ethics v. Pence, supra; Committee on Legal Ethics v. Pietranton*, 143 W.Va. 11, 99 S.E.2d 15 (1957).

The respondent seeks to avoid disciplinary action, despite his repeated ethical violations, on several distinct legal theories some of which require discussion.

## LACHES

Respondent contends that the equitable principle of laches applies to attorney disciplinary proceedings and precludes the Ethics Committee from proceeding on complaints where there has been a long delay between their receipt and the commencement of investigatory hearings. The complaints in this proceeding were received approximately two years before investigatory hearings were held, thus respondent argues that the delay on the part of the Ethics Committee dictates that this proceeding be terminated. We disagree.

Assuming, without deciding, that the defense of laches is applicable to attorney disciplinary proceedings, we are of the view that respondent has not established the elements necessary for such defense. It is a well-established principle of equity jurisprudence that delay alone does not constitute laches; the delay must be prejudicial or such as to place another at a disadvantage. *Hoffman v. Wheeling Savings & Loan Assoc.*, 133 W.Va. 694, 57 S.E.2d 725 (1950); *Pownall v. Cearfoss*, 129 W.Va. 487, 40 S.E.2d 886 (1946). Respondent has produced no evidence demonstrating prejudice, and we do not perceive any disadvantage or prejudice arising out of delay here. There is nothing in the record indicating that witnesses have died or that material evidence has been lost to the respondent's detriment.

No court which has considered the laches question, as far as we can determine, has dismissed a disciplinary proceeding against an attorney on the ground of laches. *In Re Bossov*, 60 Ill.2d 439, 328 N.E.2d 309, *cert. denied*, 423 U.S. 928, 96 S. Ct. 275, 46 L. Ed.2d 256 (1975) (the attorney contributed to a nine year delay by filing for thirty-seven continuances); *Anne Arundel County Bar Assoc., Inc. v. Collins*, 272 Md. 578, 325 A.2d 724 (1974) (bar delay was for less than one year); *In Re Weinstein*, 254 Or. 392, 459 P.2d 548 (1969), *cert denied*, 398 U.S. 903, 90 S. Ct. 1689, 26 L. Ed.2d 61 (1970) (bar delay of twenty-seven months following a five year delay caused by the attorney did not justify dismissal).

Although we do not wish to intimate approval of unnecessary delays on the part of the Ethics Committee, this quote from *In Re Weinstein, supra,* is appropriate and instructive:

> It is unnecessary to define in this case the proper remedy for vexatious and unreasonable delay on the part of the Bar. None has been shown in this case. It ought to be made clear, however, that the primary purpose of professional disciplinary proceedings is to protect the public. The punishment of an offending member of the profession is indeed a serious matter, but it

is incidental to protection of the public. If the conduct of a member of the Bar disqualifies him from the practice of law, it would not be in the public interest to dismiss the disciplinary proceedings for no other reason than the Bar's failure to prosecute them with proper dispatch. *Id.* at 394, 459 P.2d at 549.

## RIGHT TO COUNSEL

Respondent also contests the validity of these disciplinary proceedings on the theory that his constitutional rights were violated because the Ethics Committee refused to furnish him appointed counsel and a free transcript of the proceedings. At the commencement of each of the investigatory hearings held by the committee, respondent indicated that he was indigent and unable to employ counsel or pay for a transcript. He also stated he was neither physically or emotionally able to represent himself in Committee hearings. The Committee took the position that his request for counsel was not timely; that respondent was competent to conduct his own defense; that formal hearings are investigatory in nature; that there is no constitutional rule requiring appointment of counsel in disciplinary proceedings because they are not criminal proceedings; and that respondent could file a petition with this Court seeking appointment of counsel.

We agree with the Ethics Committee that respondent was competent to represent himself based on the record and briefs before this Court. Sections 21 and 16, respectively, of Article VI of the State Bar By-Laws give an accused the right to employ counsel in disciplinary proceedings and the right to purchase the record of any hearings. However, the By-Laws do not provide for either the appointment of counsel or for free hearing transcripts. It is clear that the Ethics Committee has no authority under the By-Laws to furnish counsel or to provide free hearing transcripts. Consequently, the Ethics Committee correctly determined and properly advised respondent that he should have made a timely request to this Court for appointment of counsel and

free transcripts. The first investigatory hearing was not held as originally scheduled due to a request by respondent for a continuance, yet respondent made no request for counsel until the beginning of the first hearing. Although additional hearings were subsequently held by the Ethics Committee, respondent never made a request of this Court for relief. Under the circumstances, we find no constitutional infirmity present here.

Moreover, the right to counsel under the Sixth Amendment of the United States Constitution and Article III, § 14 of this state's constitution expressly relate only to criminal proceedings and thus they have no bearing on what we refer to as attorney disciplinary proceedings. It is well-settled that disbarment proceedings in this state are neither civil actions nor criminal prosecutions but are special proceedings peculiar in their nature. Syl. pt. 2, *Committee on Legal Ethics v. Graziani*, ___ W.Va. ___, 200 S.E.2d 353 (1973), *following In Re Brown*, ___ W.Va. ___ 197 S.E.2d 814 (1973).

The respondent has cited no case in support of his constitutional argument, and almost all of the many decisions we have examined hold that due process does not require a state administrative agency to furnish counsel at government expense *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed. 2d 287 (1970); *Annot.*, 33 A.L.R.3d 229 (1970). Moreover, as a general rule, no constitutional violation occurs where an administrative agency engaging in purely investigatory activity refuses to permit the assistance of retained counsel. *In Re Groban*, 352 U.S. 330, 77 S. Ct. 510, 1 L.Ed. 2d 376 (1957); *Suess v. Pugh*, 245 F. Supp. 661 (S.D. W.Va. 1965); *Borror v. Department of Investment, Division of Real Estate*, 15 Cal. App.3d 531, 92 Cal. Rptr. 525 (1971); *Annot.*, 33 A.L.R.3d 229 (1970). Based on the foregoing authorities and the cases cited therein, and considering the nature of the evidence presented and all the other circumstances in this case, we are led to the conclusion that respondent has not been denied due process of law and that there has been no constitutional error undermining the validity of these disciplinary proceedings.

## SELF-INCRIMINATION

Respondent next objects to this disciplinary proceeding on two interrelated grounds, both of which relate to the fact that there was a concurrent criminal proceeding pending in the Circuit Court of Wood County charging respondent with embezzlement arising out of the same facts that served as the bases for the fourth count of the Committee's complaint. Respondent first says this factual circumstance required him to defend on two fronts at the same time. Secondly, he contends his constitutional right against self-incrimination was infringed, because the Ethics Committee's refusal to stay the investigatory hearings pending the outcome of the concurrent criminal charge placed him in a position where any testimony he might give to defend himself in the disciplinary hearing could or would be used against him in the criminal proceeding.

The record does not support respondent's first contention. He had ample time to prepare a defense. The Ethics Committee granted all his motions for continuances, and he was not required to be in two places at the same time.

The second point, however, raises significant legal and procedural questions which warrant our consideration particularly in view of the probability of its recurrence in the future. The respondent concedes that the criminal indictment for embezzlement in no way involves the first three counts of the Committee's complaint but relates only to the fourth count thereof. The validity of this proceeding as to the first three counts is not therefore in question. If there is any constitutional infirmity present here, it can relate only to count four. The Committee has recommended annulment of respondent's license on each of the first three counts, which have been proven according to the requirements of the law. Because of the constitutional considerations involved here, we have decided not to base our disposition of this case in any part on the respondent's conduct with respect to count four. The Court notes that the respondent was

acquitted by a jury on those criminal charges, and we are not disposed to inquire further into this matter under the circumstances of this case.

It has long been the law of this and many other states that disciplinary proceedings may proceed against an attorney prior to the initiation or outcome of any criminal prosecution where the conduct alleged as grounds for disbarment relates to his professional duties. *State v. Hays,* 64 W.Va. 45, 61 S.E. 355 (1908). *See generally* 7 Am. Jur. 2d *Attorneys at Law* § 56 (1963) & 7 C.J.S. *Attorney and Client* § 21b nn. 78-83 (1937).

The decision of this Court and the decisions contained in the above-cited authorities, however, were made without express consideration of the self-incrimination problem and before relatively recent developments in Fifth Amendment doctrine.[1] More recent decisions, expressly considering this constitutional issue, have found no constitutional violation. In *Fulmer v. State,* 445 S.W.2d 546 (Tex. Ct. Civ. App. 1960), it was held that the denial of a motion to stay civil proceedings for disbarment did not deny an attorney his rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution where there were pending two criminal cases arising out of the same transactions upon which the state bar predicted its disbarment action. *Accord, Sternberg v. State Bar of Michigan,* 384 Mich. 588, 185 N.W.2d 395 (1971).

Nevertheless, at least one state has sought to avoid the distinct possibility of unfairness by giving the Bar the discretion to withhold prosecution of disciplinary proceedings pending the outcome of the criminal aspects of the matter. *Florida Bar v. Craig,* 238 So.2d 78 (Fla. 1970). This is the approach recommended by a Special Committee of the American Bar Association appointed

---

[1] *Malloy v. Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed.2d 653 (1964) (Fifth Amendment applicable to the states); *Spevack v. Klein* 385 U.S. 511, 87 S. Ct. 625, 17 L. Ed.2d 574 (1962) (assertion of Fifth Amendment privilege against self-incrimination in attorney disciplinary proceeding not grounds for disbarment.)

to conduct an Evaluation of Disciplinary Enforcement. The Committee recommended and proposed that state courts adopt a rule providing that disciplinary proceedings would be deferred until there is a termination of pending criminal or civil litigation involving substantially similar factual allegations, provided that the respondent-attorney proceeds with reasonable dispatch to insure the prompt prosecution and conclusion of the pending litigation.[2] This rule contemplates a case-by-case disposition rather than a fixed and rigid requirement that disciplinary proceeding be held in abeyance. We are inclined to think that as a general rule the Ethics Committee should not defer disciplinary investigations where only a civil case is also pending against an accused attorney. Otherwise, we consider the Committee's proposed rule as representing the preferable approach.

There are several other issues raised by respondent attacking the validity of these proceedings, however, we have concluded that they are devoid of substance and warrant no discussion.

The last issue presented is whether respondent's conduct warrants disbarment considering all the facts and circumstances presented in the record.

Respondent's conduct does not involve one single isolated incident of professional misconduct. Respondent's manifest misconduct in several separate transactions covering a span of several years is completely incompatible with the professional conduct expected and required of members of the Bar of this State.

The respondent in a professional and fiduciary capacity improperly diverted funds belonging to his clients, as well as funds which one of his clients had a legal obligation to preserve and protect. He deposited and commingled the funds in his own account instead of holding

---

[2] Special Committee on Evaluation of Disciplinary Enforcement, *Problems and Recommendations in Disciplinary Enforcement*, 95 A.B.A. Rep. 783, 878 (1970).

them in escrow accounts for the benefit of his clients. With no bona fide claim thereto, he unreasonably and improperly detained and refused to pay over the money belonging to his clients despite repeated and vigorous demands for payment. Respondent compounded these grave offenses and his malfeasence by engaging in acts of dishonesty, fraud, deceit or misrepresentation in order to conceal the fact that he had repeatedly converted his client's money for his own use and benefit. *See, Committee on Legal Ethics v. Jones,* No. 13936 (W.Va. filed Nov. 22, 1977).

Although disciplinary proceedings may have more than one purpose, this Court has previously stated "[T]he primary purpose of the Ethics Committee is not punishment but rather the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys." *Committee on Legal Ethics v. Mullins,* ___ W.Va. ___, 226 S.E.2d 427, 429 (1976). In order to fulfill this purpose, we have concluded that the prayer of the complaint must be granted and the license of the respondent, Richard F. Pence, to practice law in the state must be annuled.

All the violations involved in this proceeding have occurred prior to respondent's initial suspension of July 1, 1975, the effective date of the annullment is to be July 1, 1975. The respondent is ordered to reimburse the Committee for the actual and necessary expenses reasonably incurred by it in connection with this proceeding.

*License to practice law*
*annulled.*