356 S.E.2d 623

**COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR**

v.

**Eunice Green THOMPSON, a Member of the West Virginia State Bar.**

**No. 17529.**

Supreme Court of Appeals of West Virginia.

April 28, 1987.

Sherri Dusic, Jack M. Marden, State Bar, Charleston, for appellant.

Belinda Morton, Fayetteville, for appellee.

PER CURIAM:

This is a disciplinary proceeding instituted by the Committee on Legal Ethics of the West Virginia State Bar against Eunice Green Thompson, a member of the Bar. The Committee has recommended that the Court suspend Ms. Thompson's license to practice law for six months.

The verified complaint and accompanying brief of the Committee filed with the Court on January 21, 1987 charges that Ms. Thompson violated Disciplinary Rules 1–102(A)(4)(5)(6) and 7–102(A)(3)(4)(5)(6)(7) of the Code of Professional Responsibility by participating in the intentional alteration of a judicial order. DR 1–102(A) states, "A lawyer shall not: ... (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ... (5) Engage in conduct that is prejudicial to the administration of justice ... (b) Engage in any other conduct that adversely reflects on his fitness to practice law." DR 7–102 requires a lawyer to represent his client within the bounds of the law.[1]

Hearings upon the charges against the respondent were conducted by the Legal Ethics Committee. Thereafter, the Committee issued its findings of fact and conclusions of law and recommended to this Court that the respondent's license to practice law be suspended for six months and that she be required to pay the expenses incurred by the Committee in the investigation and prosecution of this matter. The case was submitted to the Court upon the briefs of the parties.

The respondent was employed as an Assistant Attorney General of the State of West Virginia from January 1980 to April of 1983. She was assigned to the Human Rights Commission during that period to handle discrimination cases. This proceeding stems from one of the cases to which she was assigned to represent the Commission and the complainant, *City of Keystone*

*v. Marshall Johnson and West Virginia Human Rights Commission.* The respondent lost the case in the Circuit Court of McDowell County; the final hearing was on June 25, 1981.

Under cover letter of July 20, 1981, Grover Goode, the opposing counsel, mailed the respondent the original and a copy of the proposed order in the case. It is undisputed that she received the order, initialed her approval of its form only, and returned it to Mr. Goode. At a hearing before the Committee on June 17, 1985, Mr. Goode testified that there was some delay before he received the original order back from the respondent and that he took it to Judge Marinari for his signature within a day or two after he received it. Judge Marinari signed the order on September 10, 1981 and it was entered the same day.

The respondent filed a petition for appeal in this Court on September 27, 1982. In that petition she alleged that the date of entry of the final order from which appeal was being taken was January 12, 1982. The petition was granted on February 24, 1983. Mr. Goode's motion to dismiss the appeal as improvidently awarded (beyond the eight-month appeal period) was denied. The respondent left her position in the Attorney General's office in April of 1983. Gail Ferguson and Jed Kenna were assigned to file a brief on behalf of the Commission in the case.

Because the parties were instructed by the Court to brief the jurisdictional issue on appeal, the date the final order signed by Judge Marinari was entered was critical. There was no final order in the file kept by the Human Rights Commission and the date on a copy of the order in the certified file was illegible. To ascertain the correct date of the order, Ms. Ferguson requested a copy of the order from the Circuit Clerk of McDowell County. When she received

---

1. Dr 7–102 states in pertinent part:
  (A) In his representation of a client, a lawyer shall not: ...
  (3) Conceal or knowingly fail to disclose that which he is required by law to reveal.
  (4) Knowingly use perjured testimony or false evidence.

  (5) Knowingly make a false statement of law or fact.
  (6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.
  (7) Counsel or assist his client in conduct that a lawyer knows to be illegal or fraudulent.

the order, the date on it was September 10, 1981.

Because of the discrepancy in the dates, Ms. Ferguson contacted the respondent and asked her to execute an affidavit attesting to the date of the order as stated in her petition for appeal, January 12, 1982. The respondent agreed to do so. Shortly thereafter, she called Ms. Ferguson and told her that she had found a copy of the order. When Ms. Ferguson went to the respondent's home to get the order, the respondent gave her an onion skin copy, which was not a certified copy, and which had the date of January 12, 1982 and the judge's name typed in. On October 21, 1983, the respondent executed an affidavit averring that during the month of January, 1982, she received from the Clerk of the Circuit Court of McDowell County a copy of the order in question, "dated and entered on January 12, 1982." She further averred that pursuant to that order she filed the petition for appeal within the eight-month statutory appeal period.

Grover Goode testified that when he mailed the respondent the original order in July 1981, he also sent her an onion skin copy. The circuit clerk testified that his office does not accept onion skin copies for certification.

The respondent denied changing the date on the order and testified that she was never aware that there was a problem with the date or the appeal period. The respondent also denied giving a copy of the order with the January date on it to Ms. Ferguson. She did, however, admit making the affidavit though she testified that she didn't have a copy of the order with her at the time. The respondent presented evidence that others had access to the City of Keystone file and could have made the change. She testified, however, that she did not think that someone had changed the date; she thought the alteration was due to a mistake in the circuit clerk's office.

■ "The Disciplinary Rules of the Code of Professional Responsibility state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." *Committee on Legal*

*Ethics v. Tatterson,* 173 W.Va. 613, 319 S.E.2d 381 (1984). We have historically placed the burden on the Committee to prove its charges against an attorney. We stated in syllabus point 1 of *Committee on Legal Ethics v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312 (1973):

In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar for the purpose of having suspended the license of an attorney to practice law for a designated period of time, the burden is on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee.

*See also Committee on Legal Ethics v. Daniel,* 160 W.Va. 388, 235 S.E.2d 369 (1977); *Committee on Legal Ethics v. Pence,* 161 W.Va. 240, 216 S.E.2d 236 (1975); *Committee on Legal Ethics v. Pietranton,* 143 W.Va. 11, 99 S.E.2d 15 (1957).

From a review of the record and exhibits, we find that the Committee has met its burden. Although the respondent denied altering the date on the final order from September 10, 1981 to January 12, 1982 to avoid the consequences of missing the eight-month appeal period, she did admit executing the affidavit on October 21, 1983 in which she swore that the date on the order she received from the circuit clerk was January 12, 1982. The evidence presented by the Bar clearly shows that the order was entered on September 10, 1981. Although there was conflicting testimony, we have held that "[a]bsent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the State Bar Legal Ethics Committee ... are to be given substantial consideration." Syllabus Point 3, in part, *In re Brown,* 166 W.Va. 226, 273 S.E.2d 567 (1980).

The Committee has recommended that we enter an order suspending the respondent's license to practice law for six months. In syllabus point 2, in part, of *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427 (1976); we

held: "In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate ..."

Although we accord respect to the recommendation of the Committee, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). After consideration of the respondent's limited experience, we believe that a three-month suspension of the respondent's license would be a more appropriate penalty. Accordingly, we conclude that Ms. Thompson's license to practice law should be suspended for a period of three months and automatically reinstated after that period of time. In view of the respondent's circumstances, we decline to award costs to the Bar.

License Suspended for Three Months.