376 S.E.2d 346

**COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR**

v.

**D. Clinton GALLAHER, IV.**

No. 18701.

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

Jack M. Marden, Cynthia Gustke, W.Va. State Bar, for appellant.

Donald K. Bischoff, Summersville, for appellee.

MILLER, Justice:

This is a disciplinary case commenced by the Committee on Legal Ethics of the West Virginia State Bar against D. Clinton Gallaher, IV, a Fayette County lawyer. The Committee, by its verified complaint, asserts that Mr. Gallaher collected a clearly excessive fee in violation of DR 2–106. We agree.

### I.

On February 14, 1985, sixty-four year old Neva Dillon was a passenger in a motor vehicle operated by her son, Junior M. Dillon. Mrs. Dillon was injured when her son's vehicle slid on icy roads and struck an approaching vehicle near Van, West Virginia. As a consequence of the collision, Mrs. Dillon incurred medical bills in excess of $2300.

Junior Dillon was insured under a liability policy issued by Mountaineer Fire and Casualty Insurance Company. The parties represent that Mountaineer and its principal have a "poor reputation for dealing fairly with injured claimants" and that Mountaineer was having financial difficulty. For approximately one month, Mrs. Dillon dealt directly with Mountaineer and rejected Mountaineer's initial settlement offer of $726.25.

On the recommendation of her son, Mrs. Dillon decided to retain a lawyer to represent her in further negotiations with Mountaineer. On March 25, 1985, she met with Mr. Gallaher at his office in Fayetteville to discuss her case. Mrs. Dillon was not well educated, lacked prior experience with lawyers, and was unable to read or write.

Mr. Gallaher explained to Mrs. Dillon that it would be necessary to file a claim against Mountaineer, and possibly to file a civil suit against her son. Mrs. Dillon stated that she did not want to sue her son. Mr. Gallaher contends that he informed her that the possibility of recovery in the case was rather slim, but stated he would see what he could do. No written fee contract was executed at that time and fees were not discussed.

Mr. Gallaher's position is that his activities in preparing the case included obtaining a written medical authorization from Mrs. Dillon, reviewing pertinent medical records and bills, and forwarding such information to Mountaineer.[1] By letter dated September 4, 1985, Mr. Gallaher made a formal settlement demand of $8,500. Almost three weeks later, Mountaineer responded with a settlement offer of $4,500.

---

1. At least seven hours of Mr. Gallaher's reported time involved activity that occurred after settlement was reached.

Mr. Gallaher immediately accepted this offer.

On September 26, 1985, Mr. Gallaher met with Mrs. Dillon at her home in Bob White, West Virginia. When her family inquired about Mountaineer's offer, Mr. Gallaher stated that $4,500 was the best settlement available under the circumstances. Mrs. Dillon assented to the settlement and executed a release of all claims. Mr. Gallaher stated at this time that his fee would be 50 percent of the settlement, or $2,250.

The Dillons claim that during this conference they understood Mr. Gallaher to say that future medical bills were to be submitted to Mountaineer for payment. Mr. Gallaher contends that he advised Mrs. Dillon to submit all bills to her own insurance company. It is the Committee's position that the misunderstanding made the settlement appear more attractive to the Dillons than it actually was.

Subsequent to the settlement, a bill of $569.25 was submitted to Mountaineer by Mrs. Dillon and rejected. Members of the Dillon family met with Mr. Gallaher to discuss Mountaineer's rejection of the bill and the amount of his fee. Mr. Gallaher informed them that the case was "closed" and that no further sums were recoverable from Mountaineer. When asked about the excessiveness of the fee, Mr. Gallaher became angered and said that the Dillons could sue him or report his activities to the State Bar.

In justifying his 50 percent fee, Mr. Gallaher presented to the Committee an itemized time sheet showing 16.6 hours of work in the case. Two lawyers who practice in Fayette County were called by Mr. Gallaher to testify. One of the lawyers stated that the normal contingent fee in the vicinity was 33⅓ percent for cases settled prior to trial, and 40 percent for cases actually tried. Testimony by the other lawyer tended to show that the normal fee was 33⅓ percent for cases settled without suit, and 40 percent for cases in which suit was filed.

There was also testimony that Mr. Gallaher's fee, the equivalent of $140 per hour, was not clearly excessive.

The Committee asserts that Mr. Gallaher's 50 percent contingent fee was clearly excessive in violation of DR 2–106. It recommends a public reprimand and restitution to Mrs. Dillon of $450. For the reasons that follow, we adopt the Committee's recommendation of a public reprimand, but order restitution of $750.

II.

DR 2–106 provides, in pertinent part:

"*Fees for Legal Services.*—(A) A lawyer shall not enter into an agreement for charge, or collect an illegal or clearly excessive fee.

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent." [2]

---

**2.** We recently adopted new Rules of Professional Conduct, to become effective on January 1, 1989. These rules substantially follow the 1983 ABA Model Rules. Rule 1.5(a) provides simply that "[a] lawyer's fee shall be reasonable." It also itemizes the factors set out in DR 2–106 to be applied in the determination of reasonableness.

We recently discussed the contours of DR 2–106 in *Committee on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986). Mr. Tatterson was hired by the beneficiary of a life insurance policy to complete the papers necessary to obtain the policy proceeds. These papers were quite routine and Mr. Tatterson committed minimal time to their completion. While Mr. Tatterson represented that the insured's death by suicide might pose a liability problem, liability was fixed by the policy's incontestability clause. Within one month, the insurance company transmitted a check for $60,000, the full amount of the policy. Mr. Tatterson's contingent fee was one-third of the recovery.

 We stated in *Tatterson* that contingent fee contracts "hav[e] a greater potential for overreaching," and so must be closely scrutinized.[3] 177 W.Va. at 364, 352 S.E.2d at 114. Two points were relevant to our inquiry. First, a contingent fee is permissible "only if the representation [by the lawyer] ... involves a significant degree of risk." 177 W.Va. at 363–364, 352 S.E.2d at 114. Second, the fee received by the lawyer must be commensurate with the services actually performed. We summarized these principles in Syllabus Points 2 and 3:

"2. If an attorney's fee is grossly disproportionate to the services rendered and is charged to a client who lacks full information about all of the relevant circumstances, the fee is 'clearly excessive' within the meaning of Disciplinary Rule 2–106(A), even though the client has consented to such fee. The burden of proof is upon the attorney to show the reasonableness and fairness of the contract for the attorney's fee.

"3. In the absence of any real risk, an attorney's purportedly contingent fee which is grossly disproportionate to the amount of work required is a 'clearly excessive fee' within the meaning of Disciplinary Rule 2–106(A)." [4]

Many cases, like *Tatterson*, hold that a contingent fee is clearly excessive if the skill and labor required of the lawyer are grossly disproportionate to the fee. *E.g., Matter of Swartz*, 141 Ariz. 266, 686 P.2d 1236 (1984) (en banc); *Anderson v. Kenelly*, 37 Colo.App. 217, 547 P.2d 260 (1975); *In re Kennedy*, 472 A.2d 1317 (Del.), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2388, 81 L.Ed.2d 346 (1984); *The Florida Bar v. Moriber*, 314 So.2d 145 (Fla.1975); *Horton v. Butler*, 387 So.2d 1315 (La.App.1980); *see generally* Annot., 11 A.L.R. 4th 133 (1982) (disciplinary sanctions for excessive lawyer fees).

Most analogous of these cases is *Matter of Swartz, supra*, where the plaintiff was injured in a work-related mishap. The defendant was insured up to $150,000. The state compensation fund made workmen's compensation payments of $100,000 to the plaintiff and, by statute, possessed a lien against any tort recovery. Mr. Swartz, the plaintiff's lawyer, devoted only thirty hours to the case, prepared no suit papers, and participated in nominal settlement negotiations. The Arizona Supreme Court determined on these facts that the lawyer's con-

---

3. One response by courts to excessive fees is to impose a limit on the percentage that may be collected under a contingent fee contract. *E.g.,* Ill.Code Civ.Pro. 110 ¶ 2–1114 (graduated percentages with a ⅓ maximum in medical malpractice cases); Mich.Ct.R. 8.121(B) (⅓ of the amount recovered); N.J.R. 1:21–7 (graduated percentages with a ⅓ maximum); *see also* 28 U.S.C. § 2678 (1966) (25 percent maximum in Federal Tort Claims Act cases).

4. We also stressed in *Tatterson* that, to avoid controversy, a lawyer's fee should be determined "as soon as feasible" and memorialized in a written contract. 177 W.Va. at 363, 352 S.E.2d at 113.

Rule 1.5(b) of the Rules of Professional Conduct states: "When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, *preferably in writing,* before or within a reasonable time after commencing the representation." (Emphasis added). Rule 1.5(c) further provides, in pertinent part:

"A contingent fee agreement *shall be in writing* and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated."

tingent fee, equal to $50,000, was clearly excessive.

Applying these principles, we conclude that Mr. Gallaher's fee violated DR 2–106. There was never any anticipation that suit would be filed due to the family relationship. It was also clear that Mrs. Dillon was prepared to accept a modest settlement. This was confirmed by Mr. Gallaher's ability to accept Mountaineer's first offer of $4,500 without discussing the same with Mrs. Dillon.[5] Furthermore, the lawyer's investment of time and skill was de minimus.

Mr. Gallaher attempts to distinguish *Tatterson*. As he correctly points out, Mrs. Dillon's case involved tortious injury, and was thus the classic case justifying a contingent fee. Beyond this, all parties appear to concede that the liability of the insurer Mountaineer was doubtful.

We readily acknowledge that the risk involved in Mrs. Dillon's case was substantial, and that a contingent fee was warranted. Nevertheless, we find the fee to be grossly disproportionate under *Tatterson*. Mr. Gallaher expended, at most, 16.6 hours in all aspects of the case. This time consisted principally of review of medical records, telephone conferences, and routine correspondence. No specialized skills were required and no novel questions were presented.

We find another fact to be of critical importance to the outcome of this case. As in *Swartz*, the lawyer's fee was so great that the plaintiff was not made whole. It is significant that, after deduction of Mr. Gallaher's fee, the sum received by Mrs. Dillon was less than her uncontested special damages. We, therefore, conclude that the fee was clearly excessive in violation of DR 2–106.

### III.

▆ We next consider what disciplinary sanction is appropriate. As we have repeatedly stated, this Court is the "final arbiter" in disciplinary cases and "must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." *Committee on Legal Ethics v. Thompson*, 177 W.Va. 752, 755, 356 S.E.2d 623, 626 (1987); *see also Committee on Legal Ethics v. Lilly*, 174 W.Va. 680, 328 S.E.2d 695 (1985); *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985).

The Committee recommends that Mr. Gallaher be publicly reprimanded. We concur. While Mr. Gallaher's 50 percent contingent fee was a clear violation of DR 2–106, we note that there are mitigating factors. We find reflected in the record efforts by Mr. Gallaher to resolve the fee dispute amicably. We also find no prior disciplinary sanctions against Mr. Gallaher. We, therefore, conclude that a public reprimand is a fit and proper sanction in view of the circumstances of the case.

It is also recommended by the Committee that Mr. Gallaher be required to make restitution to Mrs. Dillon in the sum of $450. The Committee determined that a 40 percent contingent fee was reasonable, and that all sums in excess of that fee should be refunded. We have not previously discussed the power of this Court to order the restitution of an excessive attorney's fee.[6] We have surveyed the disciplinary rules and decisions of other jurisdictions, and find that such power is widely accepted. *In re Zang*, 154 Ariz. 134, 741 P.2d 267 (1987) (en banc), *cert. denied*, 484 U.S. 1067, 108 S.Ct. 1030, 98 L.Ed.2d 994 (1988); *The Florida Bar v. Moriber, supra; In re Burgess*, 275 S.C. 315, 270 S.E.2d 436 (1980); *In re Hansen*, 586 P.2d 413 (Utah 1978); *In re Guenther*, 124 Wis.2d 476, 369 N.W.2d 700 (1985); *see also* Annot., 75 A.L.R.3d 307 (1977) (power of court to order restitution in disciplinary cases).

We have remarked in our own cases that the primary purpose of the Committee, and

---

5. It was Mr. Gallaher's position before the Committee that he had implicit authority to settle for any reasonable amount in view of the questionable liability.

6. This issue was not raised or discussed in *Tatterson*.

of the disciplinary rules, is to protect the public and to enhance public confidence in lawyers. *E.g., Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427 (1976). It is consistent with this public responsibility to require a lawyer to refund a fee that is unethically obtained. Furthermore, the power to order restitution of excessive attorney's fees flows from the inherent power of this Court to supervise the practice of law. *Committee on Legal Ethics v. Douglas,* 179 W.Va. 490, 370 S.E.2d 325 (1988); *State ex rel. Askin v. Dostert,* 170 W.Va. 562, 295 S.E.2d 271 (1982); *Lane v. West Virginia Bd. of Bar Examiners,* 170 W.Va. 583, 295 S.E.2d 670 (1982); *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959). We thus find, and so hold, that this Court has the authority, in a disciplinary case, to order an attorney to make restitution of a fee that is clearly excessive in violation of DR 2–106.

We find, contrary to the Committee, that a contingent fee of 33⅓ percent was reasonable. We, therefore, deem it appropriate to require Mr. Gallaher to refund all sums in excess of that fee, or $750.

For the reasons discussed above, Mr. Gallaher is hereby publicly reprimanded and ordered to make restitution to Mrs. Dillon in the sum of $750. He is further ordered to reimburse the Committee for all actual and necessary expenses incurred, in accordance with State Bar By–Laws art. VI, § 20.[7]

PUBLIC REPRIMAND AND RESTITUTION.

---

**7.** As a final matter, Mr. Gallaher asserts that the instant case is barred by the doctrine of laches. To support the application of laches, he points to a delay of some eighteen months between the Committee's receipt of the informal complaint and the invocation of formal disciplinary procedures.

In *Committee on Legal Ethics v. Pence,* 161 W.Va. 240, 240 S.E.2d 668 (1977), we assumed, without deciding, that laches was assertible in a disciplinary case. We noted, however, that "delay alone does not constitute laches; the delay must be prejudicial or such as to place another at a disadvantage." 161 W.Va. at 247, 240 S.E.2d at 672. (Citations omitted). While there was undoubtedly some delay by the Committee in this case, we do not find the delay to have been prejudicial.