410 S.E.2d 279

The **COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR, Complainant,**

v.

**Belinda S. MORTON, a Member of the West Virginia State Bar, Respondent.**

No. 20223.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1991.

Decided Oct. 16, 1991.

Maria Marino Potter, West Virginia State Bar, Charleston, for complainant.

Michael J. Farrell, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for respondent.

PER CURIAM:

This is a disciplinary proceeding instituted by the Committee on Legal Ethics of the West Virginia State Bar against Belinda S. Morton, a member of the Bar. Because Ms. Morton failed to communicate properly with clients, the Committee recommended that this Court publicly reprimand Ms. Morton, require her to participate in a mentor program and require her to pay the costs of the proceeding. We agree with the Committee's conclusion that Ms. Morton is guilty of an ethical violation; however, we find that in light of the circumstances, the respondent should not be required to pay costs.

The complaint alleges that Ms. Morton was guilty of unethical conduct in a pattern and practice of client neglect illustrated by her failure to communicate properly with clients in three separate matters. The Committee concluded that although the charges were not supported by the evidence in one matter, Ms. Morton did fail to communicate properly with her clients in the two other matters in violation of Rule 1.4(a) of the *Rules of Professional Conduct* [1990].[1] In answer to the complaint, Ms. Morton admitted that she violated Rule

1.4(a) of the *Rules of Professional Conduct* [1990] by her failure to communicate properly with her clients in the two other matters.

The first complaint was made by Lennie K. Knicely, Jr., who requested Ms. Morton's assistance in selling some real estate that Gussie Kelly had bequeathed to her children, one of whom is Helen Knicely, Mr. Knicely's wife. Mr. Knicely's testimony and evidence were contradictory and inconsistent concerning his expectations of the scope of Ms. Morton's representation. In addition Mr. Knicely failed to tell Ms. Morton that he had previously asked another lawyer to liquidate the estate's assets and that the Circuit Court had ordered a partition sale. Ms. Morton, as requested, had the sale price lowered and helped in the negotiations that resulted in the sale of the property. Although Ms. Morton did not use an engagement letter or employment contract that specifically defined the duties and responsibilities, Ms. Morton did communicate to Mr. Knicely the extent of the representation she actually performed.

Based on these facts, the Committee recommended that the complaint from Mr. Knicely be dismissed. Based on our review of the evidence, we also find that Ms. Morton informed Mr. Knicely about the extent of her representation, and, therefore, we find no violation of Rule 1.4(a) of the *Rules of Professional Conduct* [1990].

The second complaint against Ms. Morton concerns her representation of Regina S. Parrish who was trying to collect delinquent child support payments from her former husband. Ms. Morton acknowledges that she undertook to secure a judgment for Ms. Parrish and to try to collect the back support payments. Ms. Parrish apparently understood that Ms. Morton would get her some money. Ms. Morton agrees that after the judgment was secured and Mr. Parrish appeared to have no assets,

---

**1.** Rule 1.4(a) of the *Rules of Professional Conduct* [1990], states:
 A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 The Comment to Rule 1.4 states, in part:

 The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation.

she volunteered to conduct a debtor's examination to locate any concealed assets.[2] Between March 1989 and November 1989, Ms. Morton did not communicate effectively with Ms. Parrish concerning the status of her case. Ms. Morton did not conduct the debtor's examination, and Ms. Parrish received no money on the judgment. The Committee noted that it was unlikely that Ms. Morton would have obtained any money because Mr. Parrish had divested his assets before Ms. Morton's representation of Ms. Parrish began. However, the record indicates that Ms. Morton failed to communicate with her client concerning the additional voluntary representation.

The final matter concerned Ms. Morton's representation of Nathan Johnson, who lost his driver's license after a conviction for driving under the influence. Mr. Johnson engaged Ms. Morton to help him have his license reinstated and paid a fee of $350. However, Mr. Johnson neglected to tell Ms. Morton of a previous conviction for the same offense. After Ms. Morton learned about Mr. Johnson's prior conviction, she continued to represent Mr. Johnson for an additional fee of $600. Although Ms. Morton decided to delay her collateral attack on Mr. Johnson's prior conviction until after the November 1988 election, she did not effectively communicate with Mr. Johnson about the delay from January 1988 until the ethics complaint was filed in September 1988. Prior to the Committee's hearing, Ms. Morton returned $800 of the fee to Mr. Johnson.

The Committee noted that the communication problems of Ms. Morton, who practices alone and appears willing to accept less desirable cases, arose from a lack of training in office management skills rather than from neglect or malfeasance. The Committee noted that the complaints could have been avoided if Ms. Morton had used letters of engagement, letters of disengagement or other similar policies and practices designed to foster attorney-client communication.

The Committee found that substantial disciplinary action was unwarranted and recommended a public reprimand under the condition that Ms. Morton participate in a mentor program. The Committee recommended that Ms. Morton pay the costs of the proceeding. The Committee noted that Ms. Morton agreed to participate in the mentor program and to use various resources including Continuing Legal Education programs in order to establish acceptable office management practices. As of October 31, 1990, the Committee hearing date, Ms. Morton was using engagement letters.

## II

The *Rules of Professional Conduct* [1990], similar to the Code of Professional Responsibility, which the Rules superseded and replaced, "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Syllabus Point 3, in part, *Committee on Legal Ethics v. Tatterson*, 173 W.Va. 613, 319 S.E.2d 381 (1984). The Scope of the Rules states: "Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process."

■ The Committee On Legal Ethics of the State Bar has the burden of proving its charges against a lawyer by full, preponderating and clear evidence. In Syllabus Point 1, in part, *Committee on Legal Ethics v. Lewis*, 156 W.Va. 809, 197 S.E.2d 312 (1973), we stated:

> In a court proceeding initiated by the Committee on Legal Ethics of the West Virginia State Bar ... the burden is on the Committee to prove, by full, preponderating and clear evidence, the charges contained in the Committee's complaint.

*See Committee on Legal Ethics v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989); *Committee on Legal Ethics v. Thompson*, 177 W.Va. 752, 356 S.E.2d 623 (1987); *Commit-*

---

**2.** Ms. Morton was to perform the debtor's examination *pro bono*. In addition, Ms. Morton's fee for Ms. Parrish's other representation was quite reasonable, given the nature and extent of the work. Thus, in this client's complaint we have a vindication of the old principle that no good deed will go unpunished.

tee on Legal Ethics v. Daniel, 160 W.Va. 388, 235 S.E.2d 369 (1977); *Committee on Legal Ethics v. Pietranton*, 143 W.Va. 11, 99 S.E.2d 15 (1957).

From our review of the record, we find that the Committee met its burden of proving that Ms. Morton violated Rule 1.4(a) of the *Rules of Professional Conduct* [1990] by failing to communicate effectively with two of her clients.[3] The Committee also noted that Ms. Morton's communication problem resulted from a lack of training in office management rather than from neglect or malfeasance and did not recommend substantial disciplinary action. The evidence that Ms. Morton failed to keep two of her clients reasonably informed about the status of their matters is full, preponderating and clear.

 In Syllabus Point 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985), we said:

> This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.

*In accord* Syllabus Point 1, *Committee on Legal Ethics v. Charonis*, 184 W.Va. 268, 400 S.E.2d 276 (1990); *Committee on Legal Ethics v. Gallaher*, 180 W.Va. 332, 376 S.E.2d 346, 350 (1988); *Committee on Legal Ethics v. Thompson*, 177 W.Va. 752, 356 S.E.2d 623, 626 (1987); Syllabus Point 2, *Committee on Legal Ethics v. Lilly*, 174 W.Va. 680, 328 S.E.2d 695 (1985).

 After careful consideration of the record, including Ms. Morton's lack of training in office management, we adopt the recommendation of the Committee that Ms. Morton be given a public reprimand and be required to enter a mentor program. However, in light of Ms. Morton's general willingness to accept difficult cases involving small amounts of money for people in destitute circumstances, and her further willingness to do more than her fair share of *pro bono* work, we believe it inequitable

to require Ms. Morton to pay the costs of this proceeding.

Accordingly, the Court reprimands Belinda S. Morton and orders her to enter a mentor program.

Public Reprimand and Mentor Program.

---

**3.** We note that Ms. Morton admitted that her failure to communicate with two of her clients was a violation of Rule 1.4(a) of the *Rules of Professional Conduct* [1990].