437 S.E.2d 448

Mack W. BAILEY, et al.,
Plaintiffs–Appellants,

v.

SEWELL COAL COMPANY, a
West Virginia Corporation,
Defendant–Appellee.

George HICKMAN, et al.,
Plaintiffs–Appellants,

v.

SEWELL COAL COMPANY, a
West Virginia Corporation,
Defendant–Appellee.

No. 21616.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1993.

Decided Nov. 2, 1993.

Charles M. Surber, Jr., Jackson & Kelly, Charleston, for appellee.

William C. Garrett, Gassaway, for appellants Mack W. Bailey, et al.

Linda Nelson Garrett, Summersville, for appellant George Williams.

William W. Talbott, Webster, Springs, for appellants George Hickman, et al.

NEELY, Justice.

This is an appeal by the plaintiffs below (hereinafter "the plaintiffs"), former salaried employees of Sewell Coal Company, from a judgment entered on 25 August 1992 by the Circuit Court of Marion County that affirmed a jury verdict in favor of the defendants below, Sewell Coal Company (hereinafter

"Sewell"), in an action to recover unpaid severance pay.

Sewell, a subsidiary of the Pittson Coal Group located in Lebanon, Virginia, operates a coal mining facility in Nicholas County, West Virginia. In early 1982, a severe downturn in the coal market forced Sewell to shut down some of its facilities and to lay off certain of its supervisory and clerical employees. Through March and April 1982, Sewell paid such laid off employees two weeks severance in conformity with their normal severance plan.

When, in May 1982, it became apparent that the layoffs would be permanent, Gene Matthis, president of the Pittson Coal Group, sent a letter to all laid-off salaried personnel informing them that a special severance procedure would be used for that layoff and would apply retroactively to salaried employees laid off since 1 January 1982. A memorandum attached to the letter explained the special procedure: the laid-off employee would receive one week's severance pay for each year of service, with a minimum of two weeks, not to exceed twenty weeks' severance pay.

The letter and accompanying memorandum went only to those salaried employees who were laid off. They were not distributed to the work force in general, nor were they posted or circulated among the remaining work force.

Further layoffs occurred in August and October 1982. On each occasion, the laid-off employee received a letter similar to that of May 1982 setting forth the special severance procedure. On each occasion the letter and accompanying memorandum were sent only to those salaried employees who were being laid off.

In November 1982, Sewell temporarily shut down one of its mines. Believing that the layoff resulting from the shutdown would be only temporary, Mr. Matthis instructed Sewell to pay the temporarily laid off employees the regular two weeks' severance pay. When, in April 1983, it became apparent that most of those temporarily laid off in November 1982 would not be recalled, Mr. Matthis implemented the "Guidelines to Effect Permanent Severance." Pursuant to these guidelines, once the employees laid off in November 1982 were informed that they would be permanently severed and paid under the special severance procedure, the special severance procedure would be discontinued and would not be used in any future layoff. The Guidelines were distributed only to those managers who were to implement them. They were not provided to the general work force to whom they had no application.

Layoffs continued through 1987. Those employees laid off after the special severance procedure was discontinued were paid the regular two weeks severance pay. The plaintiffs are salaried employees who were laid off after the completion of the special severance procedure. They filed two lawsuits claiming entitlement to the special severance. The jury found that Sewell had not established and did not maintain a plan, fund or program for the purpose of providing severance benefits to its salaried employees and thus returned a verdict in favor of Sewell.

The principal issue on appeal is whether an employee's right to severance pay can be implied solely from an employer's past practices in the absence of affirmative acts, promises or written representations by that employer. The plaintiffs maintain that the written severance pay policy appended to the letters sent to laid-off employees in May, August and October 1982 and April 1983 became a term and condition of their employment as well as an expressed and implied part of their employment contract which entitles them to severance pay. We conclude such is not the case and affirm the judgment of the Circuit Court.

## I.

It is elementary that mutuality of assent is an essential element of all contracts. *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.,* 158 W.Va. 935, 216 S.E.2d 234 (1975). In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act

or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied. *See Lacey v. Cardwell,* 216 Va. 212, 217 S.E.2d 835 (1975); *Charbonnages de France v. Smith,* 597 F.2d 406, 415–416 (4th Cir.1979).

■ The plaintiffs contend that Sewell's adoption of the special severance plan constituted an offer that was accepted by the plaintiffs when they continued working for the company, and therefore, as a consequence, they were entitled to severance pay on termination of employment. However, before one can be held to have extended an offer to another, whether such offer is made by word or act, there must have been some form of communication of the offer; otherwise there can be no contract binding on the alleged offeror. *See Cook v. Heck's Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986). As we stated in *Cook,* 176 W.Va. at 374, 342 S.E.2d at 459 (1986), "the offer must be definite in form and must be communicated to the offeree."

■ In the case before us, the plaintiffs never received anything in writing nor even saw the letters by which laid off employees were made aware of the temporary severance policy. They were never orally promised the special severance. Moreover, the special severance procedure was identified neither in the employee benefits manual provided to all salaried employees nor in the company's policy manual. Instead, it was applied on a layoff by layoff basis from May 1982 through April 1983. Thus, there was no offer and no mutuality of assent between Sewell and the appellants as to the special severance plan. And, in this case we decline to apply the ancient maxim of politics, law and human affairs that no good deed will go unpunished. *See Committee on Legal Ethics v. Morton,* 186 W.Va. 43, 45 n. 2, 410 S.E.2d 279, 281 n. 2 (1991).

## II.

The plaintiffs alternatively contend that the letters and memoranda sent to laid off employees during the pendency of the special severance procedure established by implication their right to severance pay in the event of their termination.

■ Although West Virginia law presumes employment to be terminable at will, we have also recognized that contractual provisions relating to discharge or job security may alter the at will status of a particular employee. *Cook v. Heck's, Inc.,* 176 W.Va. at 373, 342 S.E.2d at 458 (1986). Thus, representations contained in an employee handbook or policy manual and intended to be used by employers can meet the normal requirements for formation of an implied contract. *Adkins v. Inco Alloys International, Inc.,* 187 W.Va. at 227, 417 S.E.2d at 918 (1992).

■ Because West Virginia operates on the presumption that every employment relationship is terminable at will, however, any promises alleged to alter that presumptive relationship must be *very definite* to be enforceable. *Suter v. Harsco Corp.,* 184 W.Va. 734, 403 S.E.2d 751 (1991) (emphasis in original). The burden is on the party contending that the relationship was other than terminable at will to rebut the presumption of employment terminable at will. *Id.* Where, as here, employees seek to establish a substantial employment right, either through an express promise by the employer or by implication from the employer's personnel manual or policies, such claim must be established by clear and convincing evidence. *Adkins v. Inco Alloys International, Inc.,* 187 W.Va. at 225, 417 S.E.2d at 916 (1992).

■ In this case, the plaintiffs have failed to prove by clear and convincing evidence that a promise containing definitive and ascertainable terms was made to each of them. Sewell distributed an employee benefits manual to salaried employees that explained all of the employment benefits available. The manual, however, contained no reference to severance pay. Sewell also maintained a policy manual that was provided to those managers responsible for implementing and enforcing company policy. Again, there was no reference in that manual to severance pay. The only writing pertaining to the special severance procedure was sent to the employees who were laid off during the pendency of

the special severance plan; no writing went to the plaintiffs and no promises were made to them. We find no implied contract obligating Sewell to pay the plaintiffs severance pay.

### III.

The plaintiffs maintain that Sewell's practice of awarding laid off employees the special severance pay during the pendency of the temporary severance procedure constituted an implied promise that they too would receive the special severance pay should they be terminated.

 In order to establish an implied contract by custom and usage, it must be shown by clear and convincing evidence that the practice occurred a sufficient number of times to indicate a regular course of business. Such a showing is necessary to demonstrate the parties' implied knowledge of and reliance on the custom or usage, an essential element of such a contract. *Adkins v. Inco Alloys Intern., Inc.,* 187 W.Va. at 227, 417 S.E.2d at 918 (1992).

The case of *Shipley v. Pittsburgh & L.E.R.R. Co.,* D.C.W.D.Pa.1949, 83 F.Supp. 722, 749, quoted in *Adkins,* aptly summarizes the law in this area:

> A practice to rise to the dignity of a custom so as to enter into and form a part of a contract must possess those elements of certainty, generality, fixedness, and uniformity, as are recognized by the law as essential to constitute a custom. A loose, variable custom or discretionary practice does not rise to the dignity of a custom so as to control the rights of the parties to a contract. If the usage leaves some material element to the right of exercising an option, or discretion, of one of the parties, it does not constitute a custom.

 In this case, the appellants have failed to establish by clear and convincing evidence that Sewell had, by custom and practice, established a severance policy for employees permanently laid off. The evidence indicates that application of the plan was loose and variable; it was implemented on a layoff by layoff basis in response to the vicissitudes of the coal industry. There is no

evidence, other than the plaintiffs' subjective interpretation of events, to suggest that Sewell intended the special severance pay plan to be available generally and uniformly. Without affirmative acts, promises or written representations by an employer, an employee's right to severance pay cannot be implied solely from an employer's past generous acts.

For the foregoing reasons, the decision of the Circuit Court of Marion County is affirmed.

Affirmed.