IN THE MATTER OF SHELDON STERN, AN ATTORNEY
AT LAW.

Argued September 11, 1979—Decided October 22, 1979.

*Ms. Colette A. Coolbaugh*, Secretary, argued the cause for the Disciplinary Review Board.

Respondent appeared *pro se*.

PER CURIAM.

Respondent, Sheldon Stern, a member of the bar of this State, has been under temporary suspension since December 10, 1975 pending the completion of proceedings involving two complaints filed with the District Ethics Committee for the Counties of Burlington and Ocean.

Upon receipt of the Decision and Recommendation of the Disciplinary Review Board, we ordered that respondent show cause why he should not be disbarred or otherwise disciplined

and heard oral argument on the return day. We have reviewed the record and exhibits, and we adopt the findings, conclusion and recommendation that respondent be disbarred.

The Board's Decision and Recommendation reads as follows:

This matter is before the Board based upon two presentments filed by the District Ethics Committee for the Counties of Burlington and Ocean. Both matters involved serious misrepresentations to clients and failure to properly represent the interests of clients. Upon a review of the full record, the Board is satisfied that the conclusions of the Committee in both matters are fully supported by clear and convincing evidence.

The offense charged in the first presentment had its inception .in April 1970 when Martin A. Heffernan paid respondent a $500 retainer to institute suit against the Commercial Insurance Company. Subsequently respondent prepared a civil complaint captioned "Martin Heffernan v. Commercial Insurance Company". This complaint was never filed and legal proceedings were never initiated. Respondent furnished a copy of this complaint to Mr. Heffernan and falsely represented that he had instituted suit on his behalf.

Sometime later, respondent prepared what was purported to be an "Answer" to the phantom complaint. This answer was attributed to a Jersey City law firm. Respondent fabricated this answer to deceive his client into believing that legal proceedings had been instituted and were being processed.

In the later part of 1972, respondent prepared a false trial calendar in the Ocean County Court which scheduled the Heffernan matter for hearing on December 4, 1972. A copy of this list was furnished to Mr. Heffernan. This trial calendar was, in reality, an altered copy of a prior court calendar in which respondent blanked out one of the court cases and inserted the nonexistent case of Heffernan v. Commercial Insurance Company, together with a fictitious docket number.

On or about December 4, 1972, respondent prepared a letter adjourning the case of Heffernan v. Commercial Insurance Company. Respondent forwarded a copy of this letter to Mr. Heffernan. This letter emanated from the Ocean County Court and bore the signature of then Judge Richard A. Grossman. In actuality this letter was altered by respondent who inserted the name of the imaginery [sic] law suit and assigned a false adjourned date.

In early January 1973 respondent altered an actual court calendar for the Ocean County Court covering the dates January 22, 24, and 25, to include the Heffernan case. Respondent gave Mr. Heffernan a copy of this trial list and advised him to be present at the Ocean County Court House on January 25, 1973 at which time his case would allegedly be heard. This was done despite the fact

that respondent knew that no suit had been instituted and that the alleged processing of the matter was a sham.

At 9:30 a. m. on January 25, 1973 respondent met with Mr. and Mrs. Heffernan at the Ocean County Court House where they waited until noon for the case to be heard. In the early afternoon respondent allegedly called the judge's chambers and then informed the Heffernans that the case would not be heard that day. Subsequently respondent called Mr. Heffernan on almost a daily basis and advised him that the case still had not been reached for hearing. Finally, Mr. Heffernan was informed by his daughter, who was then married to respondent, that respondent had in fact never commenced suit.

Prior to this time, on August 19, 1972 respondent was authorized to institute a second suit on behalf of Mr. Heffernan as a claim for personal injuries under a health and accident policy with the Maryland Casualty Company, and was paid another retainer in the amount of $500. This was to be a separate and distinct action although the disability for which payments were sought arose out of the same accident which gave rise to the cause of action against the Commercial Insurance Company.

Respondent, for the second time, prepared a civil complaint captioned "Martin A. Heffernan v. Maryland Casualty Company" and furnished a copy to Mr. Heffernan. Once again, despite his representations to the contrary, respondent did not institute any action on this matter.

After having been advised of the fact that respondent had filed no pleadings on his behalf, Mr. Heffernan retained different counsel to represent him in both suits. As of that time, approximately three years had elapsed during which respondent claimed to be proceeding with the original action.

The recoveries actually received show that the claims were well-founded. The suit against the Commercial Insurance Company was settled without trial for $20,000 plus $100 per week for life and the action against the Maryland Casualty Company was settled out of court for a lump sum payment of $45,000.

The second presentment also involved deceptive practices on respondent's part. Peter MacDougall was involved in an automobile accident on January 4, 1968, in which he sustained personal injury. Shortly thereafter, Mr. MacDougall retained respondent to represent him. On December 2, 1969, respondent filed a complaint on behalf of Mr. MacDougall. Early in 1971, respondent contacted MacDougall and advised him that the case could be settled for about $2,500.00. MacDougall refused the settlement offer. Notwithstanding MacDougall's refusal, respondent settled the case for $2,250.00 and the case was dismissed with prejudice by the trial judge. Respondent never communicated to MacDougall the fact that the case had been settled. MacDougall continued to attempt to contact respondent to urge him to move the case to trial. Finally, MacDougall became exasperated by respondent's apparent inability to move the case. In

October 1971, he arranged to have Frank Pelliccia, Esq. substituted as attorney. Respondent signed the substitution of attorney, but did not disclose to Pelliccia that the case had been settled. Subsequently Mr. Pelliccia learned from the Court that the matter had been settled and dismissed. Mr. Pelliccia's attempt to have the matter reopened was unsuccessful.

Respondent failed to cooperate with the Committee in its investigation of the MacDougall complaint and was suspended from the practice of law by Order of the Supreme Court effective December 10, 1975.

## CONCLUSION AND RECOMMENDATION

The Board finds that respondent has engaged in serious violations of the Code of Professional Responsibility, *i. e.* DR 1–102(A)(3) and (4); DR 7–101(A)(1) and (2) and DR 7–102(A)(5). In both matters respondent's actions were inexcusable and reflect on the competency and integrity of the entire bar. In order that the public be protected from further serious transgressions on the part of respondent, the Board recommends that he be disbarred.

Accordingly, respondent's name is hereby stricken from the rolls.

*For disbarment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*Opposed* —None.