IN THE MATTER OF LOUIS SERTERIDES, AN ATTORNEY AT LAW.

December 8, 1988.

## ORDER

The Disciplinary Review Board having duly filed a report with the Supreme Court recommending that LOUIS SERTERIDES of JERSEY CITY, who was admitted to the Bar of this State in 1970, be publicly reprimanded for his conduct in four matters, the Disciplinary Review Board finding that respondent's conduct in each of the four matters constituted gross negligence in violation of *DR* 6–101(A)(1) and thus a pattern of negligence, in violation of *DR* 6–101(A)(2) and respondent's misrepresentations to his clients constituted a violation of *DR* 1–102(A)(4) and respondent's failure to carry out his contracts of employment constituted a violation of *DR* 7–101(A)(2) and (3), and the Disciplinary Review Board also having recommended that LOUIS SERTERIDES be required to perform 100 hours of community service, and good cause appearing;

It is ORDERED that the foregoing findings and recommendations of the Disciplinary Review Board are hereby adopted, and LOUIS SERTERIDES is publicly reprimanded; and it is further

ORDERED that LOUIS SERTERIDES is to provide 100 hours of *pro bono* legal services to Hudson County Legal Services or an appropriate alternative under terms and condi-

tions to be approved by the Disciplinary Review Board; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of respondent as an attorney at law of the State of New Jersey; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### Decision and Recommendation of the Disciplinary Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey. .

This matter is before the Board based on a Presentment filed by the District VI (Hudson County) Ethics Committee recommending that public discipline be imposed upon respondent. The Presentment resulted from five separate allegations of unethical conduct charged against respondent. The facts are as follows:

### The Harrington Matter

In 1978 Maria Harrington ("Grievant") hired respondent to represent her in connection with the sale of a parcel of realty. At closing, respondent retained the sum of $250 in escrow for payment of unascertained sewer charges. Upon receipt of those charges, respondent forwarded the appropriate check to the buyer's attorney. However, despite repeated requests by the grievant, respondent did not forward to her the $166.40 balance in the escrow account. Thereafter, a dispute arose with regard to the condition of the property, with the buyer's attorney putting forth a claim for repairs in the amount of $376.39. This claim was asserted against the balance owed by

buyer to seller on a promissory note executed at the time of closing. Said balance was $494.16. The buyers' attorney wished to get a credit against the balance due on the promisory note. Grievant requested respondent to resist the claim, but respondent, not wanting to litigate the matter, sent to grievant a check drawn on his own funds for $376.39. Grievant returned the check uncashed and demanded that respondent pay her the entire balance of the promissory note plus the entire $250 escrow. Respondent neither closed out the escrow fund nor forwarded the balance to grievant.

### The Alvarez Matter

In 1977 Carlos and Dahlia Alvarez ("Grievants"), retained respondent to pursue a medical malpractice claim against a doctor and a hospital. Respondent commenced a lawsuit, but did not pursue the matter. The suit was dismissed in May of 1980 for failure to prosecute. However, respondent did not advise his clients that their suit had been dismissed. Instead, in 1982 respondent told the grievants that the case had been settled for $190,000, and had the grievants execute releases of their claims against the doctor and the hospital. No such settlement had actually been made, and no such settlement check was ever issued. The action was subsequently reinstated by new counsel. Settlements were thereafter obtained from both the tortfeasor and respondent's malpractice carrier.

### The Sullivan Matter

Respondent was retained by John Sullivan ("Grievant") in 1976 to prosecute a medical malpractice claim. Again respondent advised his client that the suit had been settled, this time for $240,000, and had the client execute a release. No such settlement had ever been effectuated. Respondent later admitted that he had never filed suit on behalf of grievant. A legal malpractice action against respondent was ultimately settled by his carrier for $25,000.00.

### The Mazzella Matter

Dr. Barbara Mazzella ("Grievant") retained respondent for the purpose of instituting legal action against a hospital in order to contest a letter of reprimand issued to her for remarks in support of a nursing staff strike. Respondent later advised grievant that her motion for summary judgment had been granted and that the original decision of the Hospital Committee had been overturned. However, despite repeated requests, respondent never furnished a copy of the order. The grievant retained another attorney, who requested the file from respondent. The file contained a brief on a motion for summary judgment, but the docket number on the brief turned out to be the number for a completely different case with different parties. It was then ascertained that no suit had ever been filed by respondent. New counsel pursued a hearing before the Medical Executive Committee and Credentials Committee which affirmed the reprimand.

### The Kouvel Matter

As a result of a motorcycle accident in 1975, Andrew Kouvel ("Grievant") was operated upon at a New Jersey hospital. The operation was not very successful, and another operation was subsequently performed at a New York hospital. In 1979 grievant retained respondent to file a medical malpractice suit against the doctor who had performed the first operation. Grievant and his father made continuing inquiries as to how the suit was progressing, and were reassured by respondent that the case was proceeding in normal fashion. In 1982 respondent advised grievant that the case had been settled for $23,000, and had grievant sign a release. Grievant then made numerous attempts to collect the settlement, until respondent finally admitted that there never was a settlement. In fact no suit had ever been filed. Grievant then threatened a malpractice suit against respondent. The matter was ultimately settled after respondent paid grievant the sum of $15,000 from his own funds.

As a result of the ethics charges instituted against respondent, the Supreme Court, on May 31, 1983, issued an order designating a preceptor to supervise respondent's practice of law. Konstantine Kotsopoulos, Esq., acted as respondent's preceptor until December 31, 1983, and Ronald H. Shaljian, Esq., has been acting as preceptor since that date. Quarterly reports have been received from that proctor, all of which have been positive in evaluating respondent's performance as an attorney.

Respondent filed an answer in the ethics proceedings essentially admitting most of the facts alleged in the complaint. Hearings were held before a panel of the District VI Ethics Committee on May 24, 1984 and June 6, 1985. By decision dated November 12, 1985, the hearing panel found that respondent was guilty of unethical conduct in all but the Harrington matter.

After an additional matter had been brought before and dismissed by the District VI Ethics Committee, the Presentment was brought on before the Disciplinary Review Board on October 21, 1987, together with an appeal brought by grievant Harrington on her case, which had been dismissed by the hearing panel. The Board recommended that a current report be obtained as to respondent's present psychiatric condition. Respondent was evaluated by Dr. Arthur H. Schwartz on July 18, 1988, and his report has now been delivered to the Board.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the committee in finding respondent guilty of unethical conduct are fully supported by clear and convincing evidence. Respondent's conduct in the four matters within the presentment constituted gross negligence in each case in violation of *DR* 6–101(A)(1) and thus a pattern of negligence in violation of *DR* 6–101(A)(2). Respondent is also guilty of misrepresentations to his clients, in violation of *DR* 1–102(A)(4). He failed to carry out his contracts of employment, thereby

prejudicing or damaging his clients during the course of the professional relationship, in violation of *DR* 7-101(A)(2) & (3).

The Board further concurs in the district committee's dismissal of the Harrington matter. All parties have been advised of the Board's affirmance of the committee's determination.

When respondent was retained by his clients he owed each of them a duty to pursue their respective interests diligently. *See Matter of Smith,* 101 *N.J.* 568, 571 (1986), *Matter of Schwartz,* 99 *N.J.* 510, 518 (1985); *In re Goldstaub,* 90 *N.J.* 1, 5 (1982). The record indicates that in each case, with the exception of some initial activity, respondent disregarded his obligation to his clients.

The record clearly indicates that respondent lost interest in, or track of, his clients' cases. *In re Rigg,* 57 *N.J.* 288 (1970). He violated *DR* 1-102(A)(4) in failing to represent accurately the status of their cases to his clients. *In re Goldstaub, supra,* 90 *N.J.* at 5. He also ignored many of his clients' requests for information and failed to advise them of pertinent developments as they occurred. "In some situations, silence can be no less a misrepresentation than words." *Crispin v. Volkswagenwerk, A.G.,* 96 *N.J.* 336, 347 (1984). Here, however, there was worse than silence: there was affirmative misrepresentation to the clients. Respondent advised his clients that suits had been filed and affirmative results obtained, when, in fact, either nothing had been done or the suits had been dismissed for failure to prosecute. Such transgressions reflect on the competency and integrity of the entire Bar and cannot be condoned. *In re Barry,* 90 *N.J.* 286, 291 (1982); *In re Palmieri,* 75 *N.J.* 488, 489 (1978).

Although serious, respondent's inaction and misrepresentation in no way approached the pattern of deceit, forgery and fraud evidenced in *In re Sheldon Stern,* 81 *N.J.* 297 (1979) (respondent who completely manufactured two case files, altered court documents, caused clients to appear at the courthouse for their "trials", settled a case without client's authorization and failed to cooperate with the ethics committee, was

disbarred). While clearly disingenuous in his dealings with his four clients, respondent ultimately faced his responsibilities, compensated the clients he injured, and has cooperated fully throughout the ethics proceedings.

The purpose of discipline is not the punishment of the offender, but "protection of the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession." *In re Getchius*, 88 *N.J.* 269, 276 (1982), citing *In re Stout*, 75 *N.J.* 321, 325 (1978). The severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of all the relevant circumstances." *In re Nigohosian*, 88 *N.J.* 308, 315 (1982). Therefore, mitigating factors are relevant and may be considered. *In re Hughes*, 90 *N.J.* 32, 36 (1982).

The pattern of misconduct in these matters occurred more than five years ago. During that time, respondent was undergoing a period of personal stress which was ultimately diagnosed as a "panic disorder" and depression. He sought psychiatric counseling on a regular basis between 1982 and 1984. The recent psychiatric evaluation conducted at the Board's direction concluded that respondent has achieved "a rather comfortable life adjustment." (Report of Arthur H. Schwartz, M.D., received August 31, 1988).

Respondent has been practicing under a preceptor for the past five years. Recognizing his psychological difficulties in handling tort cases, respondent has eliminated them from his practice, concentrating primarily on criminal law. No new grievances have been filed against him. The quarterly reports submitted by his proctor have been uniformly favorable. Respondent has made restitution to the clients he damaged.

The unfortunate episode in respondent's career appears to be well behind him. He has practiced for the past five years without incident or further complaint. His preceptor has complimented his legal skills, even to the extent that respondent's legal advice has been sought by him (Ex. R-1). Respondent has utilized the intervening time between his misconduct and

the present to good purpose, including psychiatric therapy and the restructuring of his practice. Suspension at this juncture would be more vindictive than just. *Matter of Verdiramo,* 96 *N.J.* 183, 187 (1984).

Public confidence in the bar, however, requires the appropriate acknowledgment of the infractions. The Board therefore unanimously recommends respondent be publicly reprimanded. His offer to provide community service is constructive and of public benefit. Respondent should be required to provide 100 hours of *pro bono* legal services to Hudson County Legal Services or an appropriate alternative as approved by the Board or the Court.

Respondent has stated his intention to continue the practice of law only in association with another practitioner, either his present preceptor or another attorney. Whereas this obviously would be a prudent course to follow, after five years of proctorship without incident, the Board does not believe it necessary to extend the present formal proctorship and reporting requirements. Consequently, the Board further recommends that the proctorship of respondent's practice be terminated.

The Board further recommends that respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.

One member did not participate.