418 S.E.2d 733

The COMMITTEE ON LEGAL ETHICS
OF the WEST VIRGINIA STATE
BAR, Complainant,

v.

John R. MITCHELL, a Member
of the West Virginia State
Bar, Respondent.

No. 21005.

Supreme Court of Appeals of
West Virginia.

Submitted April 7, 1992.

Decided May 15, 1992.

Sherri D. Goodman, West Virginia State Bar, Charleston, for complainant.

James B. McIntyre, McIntyre, Haviland and Jordan, Charleston, for respondent.

NEELY, Justice:

This is a disciplinary proceeding instituted by the Committee on Legal Ethics of the West Virginia State Bar against John R. Mitchell, a member of the Bar. Because Mr. Mitchell neglected two legal matters entrusted to him when he failed to carry out two contracts of employment, the Committee recommended that this Court suspend Mr. Mitchell's license to practice law in this State for a period of sixty (60) days and require him to pay the costs of the proceeding. Although in theory we approve of using public or community service as a sanction, we adopt the Committee's recommendation for discipline in this case because Mr. Mitchell's proposal of community service was incomplete and was not presented to the Committee.

The complaint alleges that Mr. Mitchell neglected two legal matters entrusted to his care when he failed, to the detriment of his clients, to carry out two contracts of employment in violation of the *Code of Professional Responsibility*, DR 6–101(A)(3) and DR 7–101(A)(2) and (3).[1]

In his testimony, Mr. Mitchell admitted that in these two cases he failed to keep his clients informed about the status of their cases and to act with reasonable diligence and promptness.[2] Mr. Mitchell also acknowledged that the Committee should take some action against him for his dilatory conduct and in his brief to this Court suggests that as an alternative he perform 120 hours of public and community service.[3]

## I

In 1969 Danny Ferguson and James Phillips, the complainants, sought assistance from the Mr. Mitchell's law firm of DiTrapano, Mitchell, Lawson and Field because of injuries they received in industrial accidents. Two separate civil actions were filed in 1970 by Rudolph DiTrapano, Mr. Mitchell's partner, in Kanawha County Circuit Court and were styled *James Phillips v. Rish Equipment Company, et al.* and *Dannie Joe Ferguson v. Rish Equipment Company, et al.* Both complaints alleged negligence and breach of warranty and both contained a cross-claim against a third party defendant.[4] The injuries occurred on successive days when the brakes allegedly failed on "pay haulers," which are large trucks for rock hauling apparently manufactured by International Harvester.[5]

In Mr. Ferguson's case, Mr. DiTrapano was the only lawyer to appear in discovery documents or in court between 1970 and

---

1. Disciplinary Rule 6–101 of the *Code of Professional Responsibility* provides:
    (A) A lawyer shall not:
    \* \* \* \* \* \*
    (3) Neglect a legal matter entrusted to him. Disciplinary Rule 7–101 of the *Code of Professional Responsibility* provides:
    (A) A lawyer shall not intentionally:
    \* \* \* \* \* \*
    (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 7–102(B).
    (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).

2. The complaint also alleges that Mr. Mitchell's actions violated the *Rules of Professional Conduct* [1990], which superseded and replaced the *Code of Professional Responsibility*. However, because most of Mr. Mitchell's conduct in these matters occurred before the adoption of the

*Rules,* the State Bar conceded that the *Rules* were inapplicable and the Committee dismissed the allegations concerning violations of the *Rules.*

3. In the hearing before the Committee, Mr. Mitchell suggested that a public reprimand would be the appropriate discipline.

4. Neither case file contains an amended complaint attempting to use this Court's holdings in either *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978) (employer's willful misconduct) or *Morningstar v. Black & Decker Mfg. Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979) (recognizing strict liability for a defective product).

5. Various parts of the circuit court file in Mr. Phillips' case were missing, and some interrogatories filed in 1980 were missing from Mr. Ferguson's court file.

1974. After 1974 no entries were made in the docket until December 1977 when Mr. Mitchell filed a consent to an April 1978 trial, that was not held. In 1982 Mr. Mitchell filed and answered interrogatories requesting current addresses. Again in 1983 and 1984 Mr. Mitchell filed token interrogatories asking for a defendant's current address.[6] On eight occasions a $5 fee was paid to the circuit clerk by Mr. Mitchell or his original law firm to retain Mr. Ferguson's case on the docket. On 7 November 1986, Rish Equipment Co., a defendant, filed a motion to dismiss for non-prosecution and on 17 November 1986, the third party defendant also filed a motion to dismiss. Mr. Ferguson's case was dismissed on 20 January 1987.[7] On 1 September 1988, Mr. Mitchell filed a motion to reinstate the action. However because more than three court terms had passed, the circuit court denied the motion and this Court denied the appeal on 12 March 1991.[8]

It is undisputed that Mr. Phillips' case followed a similar course. Although the circuit court file for Mr. Phillips' case is incomplete, it does contain a 1 September 1988 motion to reinstate, filed by Mr. Mitchell. Mr. Mitchell does not dispute that virtually no activity occurred in Mr. Phillips' case between 1974 and its dismissal in January 1987. The circuit court denied Mr. Mitchell's motion to reinstate.

In 1979, after Mr. Mitchell's law firm dissolved, he began an independent practice and he took with him Mr. Ferguson's and Mr. Phillips' files. Mr. Mitchell acknowledged that for a long period he did not notify either client that he had assumed responsibility for his case or that he no longer practiced with Mr. DiTrapano. Mr. Mitchell said that after 1979 he did not communicate with Mr. Phillips until at least 1985 or 1987 and that he had no communication with either client for at least four years and possibly up to six years. When Mr. Ferguson and Mr. Phillips inquired about their cases, Mr. Mitchell did not respond and even after the clients came to his office, he failed to contact them. Then, after the cases were dismissed, Mr. Mitchell failed timely to inform his clients and admitted that Mr. Phillips was not told of his case's dismissal "for quite some time." After the cases were dismissed, about April 1987, Mr. Ferguson told Mr. Mitchell about a witness who examined the brakes on the vehicles involved. Based on this new information, Mr. Mitchell drafted a motion to reinstate the cases on the docket. However, the motion to reinstate was not filed until 1 September 1988, more than three terms after the 20 January 1987 dismissal.[9] During the course of his representation Mr. Mitchell did not tell his clients that he thought their cases had little chance of success or that additional information was needed.

The Committee noted that Mr. Mitchell is a competent lawyer with a large trial docket who normally is a zealous advocate for his clients. The Committee recognized that Mr. Mitchell had kept both cases on the docket because he hoped additional information would come to light and that he had difficulty telling his clients about the weaknesses of their cases. The Committee found that Mr. Mitchell failed to pursue these two cases because of their inherent factual weaknesses and not from an unwillingness to prosecute them. At the hearing, Mr. Mitchell admitted that some disciplinary action was necessary because he failed with reasonable diligence to repre-

---

**6.** The filing of token interrogatories to keep a case on the docket was common practice during the late 1970's and early 1980's.

**7.** Although the circuit court file did not contain a copy of the dismissal order, Mr. Mitchell does not dispute that the order was entered.

**8.** Rule 41(b) of the *W.Va. Rules of Civil Procedure* states in pertinent part:

The court may, on motion, reinstate on its trial docket any action dismissed under this rule, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after entry of the order of dismissal or nonsuit. . . .

**9.** Mr. Mitchell testified that he timely drafted the petitions to reinstate, and that in the Fall of 1987 he requested another lawyer handle the motions to reinstate. Mr. Mitchell said that the filing of the petitions was delayed because he hoped to have a favorable judge. Mr. Mitchell said that he did not supervise the cases until he was contacted by the Committee.

sent these clients. The Committee found that although Mr. Mitchell demonstrated sincere contrition, the delay of 17 years in prosecuting these cases (during at least nine years of which the cases were under the direct control of Mr. Mitchell), was intolerable and recommended that Mr. Mitchell be suspended from the practice of law for not more than 60 days and pay the costs of the proceeding. The Committee did not recommend restitution because of the pending malpractice suits filed by Mr. Ferguson and Mr. Phillips against Mr. Mitchell.

In his argument before this Court, Mr. Mitchell maintains that a sixty (60) days suspension would create a hardship for his other clients because of numerous trial dates and the suspension would serve little useful purpose. As an alternative, Mr. Mitchell suggests for the first time that he be required to perform 120 hours of public and community service over the next ninety (90) days. Mr. Mitchell also requests that if his license is suspended, he be granted an automatic restoration of his license so that the suspension does not last longer than the recommended sanction.

## II

"The Disciplinary Rules of the Code of Professional Responsibility state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Syllabus Point 3, *Committee on Legal Ethics v. Tatterson*, 173 W.Va. 613, 319 S.E.2d 381 (1984).

■ The Committee on Legal Ethics of the State Bar has the burden of proving its charges against a lawyer by full, preponderating and clear evidence. In Syllabus Point 1, in part, *Committee on Legal Ethics v. Lewis*, 156 W.Va. 809, 197 S.E.2d 312 (1973), we stated:

> In a court proceeding initiated by the Committee on Legal Ethics of the West Virginia State Bar ... the burden is on the Committee to prove, by full, prepon-

10. We note that Mr. Mitchell admitted that he neglected these two matters and that he failed

derating and clear evidence, the charges contained in the Committee's complaint.

*See Committee on Legal Ethics v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989); *Committee on Legal Ethics v. Thompson*, 177 W.Va. 752, 356 S.E.2d 623 (1987); *Committee on Legal Ethics v. Daniel*, 160 W.Va. 388, 235 S.E.2d 369 (1977); *Committee on Legal Ethics v. Pietranton*, 143 W.Va. 11, 99 S.E.2d 15 (1957).

■ From our review of the record, we find that the Committee met its burden of proving that Mr. Mitchell violated Disciplinary Rules 6–101(A)(3) and 7–101(A)(2) and (3) of the *Code of Professional Responsibility* by neglecting two matters entrusted to him and by failing to carry out two contracts of employment thereby prejudging or damaging his clients.[10] The Committee noted that although Mr. Mitchell did not attempt to use two new tort theories that had developed while the cases were pending, Mr. Mitchell's neglect primarily arose because of the cases' factual weaknesses rather than from an unwillingness to prosecute. We also note that Mr. Mitchell's neglect of these two matters continued after new evidence was found and that the motions to reinstate were not filed until more than three court terms had passed. The evidence that Mr. Mitchell damaged or prejudiced his clients by his neglect and failure to carry out the two contracts of employment is full, preponderating and clear.

In Syllabus Point 3, in part, *In re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980), we said:

> Absent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the State Bar Ethics Committee ... are to be given substantial consideration.

*In accord* Syllabus Point 3, *Committee on Legal Ethics v. Smith*, 184 W.Va. 6, 399 S.E.2d 36 (1990); Syllabus Point 2, *Committee on Legal Ethics v. Harman*, 179 W.Va. 298, 367 S.E.2d 767 (1988).

communicate with these two clients.

In the present case, we find that Mr. Mitchell's neglect of two matters for over nine years that continued even after new evidence was discovered is a serious dereliction. Mr. Mitchell's failure timely to file the motions to reinstate damaged his clients. Although Mr. Mitchell acknowledged that he neglected these two matters, he suggests to this Court as an alternative to suspension that he be required to perform 120 hours of public and community service within the next 90 days.

■ In an appropriate case involving legal ethics, this Court would consider requiring community service as a legitimate sanction provided that the details of the proposed service are sufficiently specific that the Legal Ethics Committee can appropriately evaluate them.

■ We would consider community service in a case where the lawyer is not hopelessly incompetent, immoral, or impaired because suspension creates a dead weight loss that helps no one. Disbarment, at least, removes a bad lawyer from preying on an unsuspecting world. Suspension is an economic sanction that provides no public benefits. Consequently, we would be willing to consider community service as a sanction because the public would then benefit, but that implies, in turn, a serious community service fully occupying a lawyer.[11] Dilettantish, part-time, frivolous proposals that merely seek to avoid the suspension's economic loss would, therefore, be entirely unacceptable to us.

In the present case the alternative of community service is not appropriate because Mr. Mitchell's suggestion of community service was not made to the Committee and no comprehensive plan for the proposed community service was developed or submitted. Thus, Mr. Mitchell's suggestion lacks information concerning both supervision and the "community" service to be undertaken. In presenting the alternative to this Court, Mr. Mitchell's counsel casually suggested the handling of environmental matters, which is neither sufficiently neutral nor sufficiently well-regarded as to be automatically and universally considered "community service." Indeed, some members of this Court would undoubtedly consider filing briefs on behalf of environmental groups as "community service," while this writer, if allowed to craft the sanction, would have penitent lawyers preparing briefs supporting application of the "incorporation" doctrine to the Second Amendment to the *Constitution of the United States.*

■ To meet our criteria, therefore, community service must involve representation of the indigent in important matters like divorce, child abuse, or juvenile proceedings where there is no private money to pay lawyers and the state's personnel assigned to provide this representation are burdened to the breaking point. Because the issue of community service was raised for the first time here, we decline to fill-in the gaps of Mr. Mitchell's proposal and we adopt the Committee's recommendation that Mr. Mitchell's license should be suspended for sixty (60) days; however, we grant Mr. Mitchell's request that his reinstatement be automatic.

Accordingly, the Court suspends Mr. Mitchell's license to practice for sixty (60) days and orders him to pay the costs of the proceeding.

License suspended for sixty days and costs of the proceeding.

---

11. Although most jurisdictions consider community service as a mitigating factor, the Supreme Court of New Jersey, in *Matter of Serterides,* 113 N.J. 477, 550 A.2d 1216 (1988), ordered that in addition to a public reprimand, the lawyer provide 100 hours of *pro bono* legal services. In ordering the community service, the New Jersey Court noted that the service was recommended by the Discipline Review Board and that the service would be a public benefit. In *Matter of Sandbach,* — Del.Supr. —, 546 A.2d 345 (1988), the Delaware Supreme Court allowed the third year of a suspension to be relieved provided the lawyer had, within the first two years of suspension, performed 400 hours of community service. In *Sandbach,* the service was to be determined by the Board on Professional Responsibility and was to be supervised by a member of the Bar who volunteered the necessary time.