427 S.E.2d 471

THE COMMITTEE ON LEGAL ETHICS
OF THE WEST VIRGINIA STATE
BAR, Complainant,

v.

C. Andy KEENAN, A Member
of the West Virginia State
Bar, Respondent.

No. 21466.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 12, 1993.

Decided Feb. 11, 1993.

Sherri D. Goodman, Bar Counsel, W.Va. State Bar Charleston, for complainant.

C. Andy Keenan, pro se.

PER CURIAM:

This disciplinary proceeding was instituted by the Committee on Legal Ethics of the West Virginia State Bar against C. Andy Keenan, a member of the Bar. The Committee found that Mr. Keenan engaged in a pattern and practice of neglect because of his failure: (1) to communicate with three different clients, (2) to act with reasonable diligence in the representation of clients, (3) to keep clients reasonably informed, and (4) to return timely an unearned fee. Although Mr. Keenan alleged that this pattern and practice of neglect stemmed from his psychological and psychiatric problems, he failed to submit evidence that these problems had stabilized. The Committee recommends that this Court suspend Mr. Keenan's license to practice law until Mr. Keenan establishes the stabilization of his psychological and psychiatric disorder and his possession of "the present psychologi-

cal and mental capacity to provide effective, thorough, and complete representation to his clients." The Committee also recommends that Mr. Keenan be required to pay the costs of this and any subsequent proceedings. Based on our review of the record, we find that Mr. Keenan is guilty of ethical violations and adopt the recommendations of the Committee.

## I

The charges against Mr. Keenan are based on three separate complaints. The first complaint was made by Roger Bailey, who in 1985 retained Mr. Keenan after he was injured when he slipped and fell at a post office on January 24, 1985. Because Mr. Keenan took no action on the matter except for providing the federal government with an initial notice of a potential claim and sending a few perfunctory letters, the statute of limitations expired before a suit was filed. After the initial visit and some early telephone conversations, Mr. Keenan failed to return Mr. Bailey's telephone calls and did not otherwise communicate with Mr. Bailey.

In February 1989, Mr. Bailey filed an ethics complaint against Mr. Keenan (No. 89-041). Mr. Keenan, by letter dated March 15, 1989, admitted that Mr. Bailey's allegations were "generally, true" and promised to contact Mr. Bailey. After Mr. Keenan failed to contact him, on May 10, 1989, Mr. Bailey discharged Mr. Keenan and demanded his file. However, the file was never returned because it was lost by Mr. Keenan. Mr. Bailey sought redress through a malpractice claim that was settled. The settlement requires Mr. Keenan to pay $20,000, plus accumulated interest, in installments over a two year period to Mr. Bailey. However, because of Mr. Keenan's finances, the installment payments have been sporadic and a substantial sum remained unpaid as of April 19, 1991.

The second complaint was made by Mary Moore, who, in January 1983, retained Mr. Keenan to file a partition suit over land in Clay County in which Arnold Moore, Mrs. Moore's husband, reportedly had a ⅚ interest. In April 1983, Mr. Keenan, by letter, requested information concerning the land and, shortly thereafter, Mr. Moore provided the requested information. During the next four years, although Mr. and Mrs. Moore made several attempts to contact Mr. Keenan, Mr. Keenan did not return their calls and did not file the partition suit.

After Mr. Moore's death in 1986, Mrs. Moore discovered that no suit had been filed and, on August 3, 1987, Mrs. Moore wrote to Mr. Keenan requesting action. In his response of August 20, 1987, Mr. Keenan promised that the suit would be filed as soon as possible. Suit was filed in June 1988.

Although Mrs. Moore informed Mr. Keenan that she would be in Florida for the winter, Mr. Keenan failed to return Mrs. Moore's calls before she left. On October 11, 1988, Mrs. Moore wrote to Mr. Keenan asking why he had failed to tell her about her case and to respond to her calls. Mr. Keenan failed to respond. In February 1989, Mrs. Moore filed an ethics complaint against Mr. Keenan (No. 89-049).

By letter dated April 8, 1989, Mr. Keenan admitted that he had been dilatory in handling Mrs. Moore's case and said that he would conclude it as soon as possible. However, Mr. Keenan again failed to return Mrs. Moore's calls and failed to contact her before she left for Florida. On October 7, 1989, Mrs. Moore wrote Mr. Keenan asking for information about her suit, requesting information about the possibility of purchasing the land's remaining ⅙ interest, and complaining about Mr. Keenan's failure to communicate with her. Again, Mr. Keenan failed to respond. By letter dated June 7, 1990, Mrs. Moore discharged Mr. Keenan and demanded her file. Mr. Keenan apologized and on July 31, 1990 sent Mrs. Moore's file to her new attorney.

The third complaint was made by John B. Detamore who on October 9, 1989 retained Mr. Keenan to file a divorce action immediately and paid Mr. Keenan a $400 flat fee. Mr. Keenan failed to file the suit and after Mr. Detamore received a divorce complaint from his wife on November 3, 1989, he began calling Mr. Keenan's office two or

three times a day to find out why the suit was not filed. After Mr. Keenan was unavailable to talk with him and failed to return his calls, on November 14, 1989, Mr. Detamore discharged Mr. Keenan, hired another lawyer and demanded the return of the $400 fee. Although in December 1989 Mr. Keenan purchased a money order payable to Mr. Detamore, Mr. Keenan failed to send the money order until June of 1990. Because Mr. Detamore was unavailable, Mr. Keenan testified before the Committee about Mr. Detamore's complaint.

Although Mr. Keenan was unable to recall all of the details, he did not contest the charges and admitted that the allegations were consistent with the matters he remembered. Mr. Keenan demonstrated contrition about the ethical violations and about the harm caused to his clients. Mr. Keenan maintained he suffers from "a bipolar mental or emotional disorder (of a manic/depressive type)" which manifests itself in him by a recurrent inability to deal with certain types of problems and an inability to complete some of his clients' cases. Mr. Keenan said that he is a diabetic and that diabetes is sometimes associated with the onset of the bipolar disorder from which he suffers. However, although Mr. Keenan maintained that he is receiving treatment, he failed to present an expert witness concerning his condition. Mr. Keenan also failed to submit reports from his treating physicians even after Mr. Keenan told the Committee at the conclusion of the hearing that he would submit reports on his current mental status and prognosis within a couple of weeks.

Based on these three complaints, the Committee found that Mr. Keenan had violated Rules 1.1[1], 1.3, 1.4 and 1.16(d) of the *Rules of Professional Conduct* [1990].[2] The Committee noted that although they had considered Mr. Keenan's psychological and psychiatric defense as mitigating factors, they found that "the threat to the public ... still exists." Based on these findings, the Committee recommended that Mr. Keenan's license to practice law be suspended until he can establish that his psychological and psychiatric problems have stabilized so that he is competent to practice law, and that he be required to pay the costs of the proceedings.

## II

Similar to the *Code of Professional Responsibility*, which was superseded by the *Rules of Professional Conduct* [1990], the *Rules* "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Syllabus Point 3, in part, *Committee on Legal Ethics v. Tatterson*, 173 W.Va. 613, 319 S.E.2d 381 (1984).

The Committee on Legal Ethics of the State Bar has the burden of proving its charges against a lawyer by full, preponderating and clear evidence. In Syllabus Point 1, in part, *Committee on Legal Eth-*

---

1. Because only 36 days were involved in Mr. Detamore's complaint, the Committee did not find clear and convincing evidence of a violation of Rule 1.1 in Mr. Detamore's case.

2. The Committee found that Mr. Keenan's pattern and practice of neglecting the affairs of his clients violated Rules 1.1, 1.3 and 1.4 of the *Rules of Professional Conduct* [1990], which provide:
   *Rule 1.1* A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
   *Rule 1.3* A lawyer shall act with reasonable diligence and promptness in representing a client.
   *Rule 1.4* (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
   The Committee found that Mr. Keenan's failure to refund the fee to Mr. Detamore violated Rule 1.16(d), which provides:
   Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

**40**

*ics v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312 (1973), we stated:

> In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar ... the burden is on the Committee to prove, by full, preponderating and clear evidence, the charges contained in the complaint filed on behalf of the Committee.

*In accord* Syllabus Point 1, *Committee on Legal Ethics v. Mitchell,* 187 W.Va. 287, 418 S.E.2d 733 (1992).

 From our review of the record, we find that the Committee met its burden of proving that Mr. Keenan violated Rules 1.1, 1.3, 1.4 and 1.16(d) of the *Rules of Professional Conduct* [1990]. Mr. Keenan did not challenge the charges and acknowledged his difficulties in providing competent representation, in acting with reasonable diligence, in communicating effectively with his clients and in returning an unearned fee. We also note that although Mr. Keenan said at the April 19, 1991 hearing that he would provide medical reports of his condition, no such reports were provided to the Committee before its October 1992 recommended decision.

In Syllabus Point 3, *In re Brown,* 166 W.Va. 226, 273 S.E.2d 567 (1980), we said:

> Absent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the State Bar Ethics Committee ... are to be given substantial consideration.

*In accord* Syllabus Point 2, *Mitchell, supra,* Syllabus Point 3, *Committee on Legal Ethics v. Smith,* 184 W.Va. 6, 399 S.E.2d 36 (1990); Syllabus Point 2, *Committee on Legal Ethics v. Harman,* 179 W.Va. 298, 367 S.E.2d 767 (1988).

After careful consideration of the evidence including Mr. Keenan's failure to submit evidence of his medical condition, we adopt the recommendations of the Committee that (1) Mr. Keenan's license to practice law be suspended for an indefinite period until he can establish with reasonable medical certainty that his bipolar disorder has been stabilized and that he pos-

sesses the present psychological and mental capacity to provide effective, thorough and complete representation to his clients and (2) Mr. Keenan be required to pay $326.67, the costs of this proceeding, as well as the costs of any subsequent proceeding. If Mr. Keenan does not pay such costs and, thereafter, seeks to be reinstated, he must submit a financial statement to ascertain his ability to pay. Before Mr. Keenan's license to practice law can be reinstated he must also comply with all mandatory continuing legal education and dues requirements.

Accordingly, the Court suspends Mr. Keenan's license to practice law for an indefinite period and orders him to pay the costs of the proceeding.

License suspended indefinitely and costs of proceeding.