483 S.E.2d 866

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Jeremiah F. McCORMICK, a Member of the West Virginia State Bar, Respondent.**

No. 23390.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 25, 1997.

Decided March 14, 1997.

Sherri D. Goodman, Chief Disciplinary Counsel, Charleston, for Complainant.

David P. Cleek, Andrew F. Workman, McQueen, Harmon, Potter & Cleek, L.C., Charleston, for Respondent.

PER CURIAM.

This disciplinary proceeding was instituted by the complainant, Office of Disciplinary Counsel (hereinafter "ODC") of the West Virginia State Bar, against the respondent, Jeremiah F. McCormick, a member of the Bar. The Lawyer Disciplinary Board (hereinafter the "Board") found that Mr. McCormick engaged in a pattern and practice of neglect involving his: (1) failure to communicate with clients, (2) failure to act with reasonable diligence in the representation of clients, (3) failure to keep clients reasonably informed, (4) engaging in matters which resulted in a conflict of interest, (5) dealing with an unrepresented person, (6) loaning money to a client, and (7) failure to respond to disciplinary inquiries.[1] The Board recommends that this Court publicly reprimand Mr. McCormick, require that he perform 40 hours of community service and require him to pay the costs of this proceeding. Based on our review of the record, we find that Mr. McCormick is guilty of ethical violations and adopt the recommendations of the Board.

## I.

Mr. McCormick and ODC stipulated to the facts of this case and agreed upon the sanctions recommended by the Board. The complaints filed against Mr. McCormick involve five clients.

The first complaint involved Mr. McCormick's representation of Leonard Jones in a divorce action. At some point during the representation Mr. Jones moved to North Carolina. Subsequent to the change in residence, Mr. McCormick failed to forward to Mr. Jones a copy of the family law master's recommended decision in the case. Mr. McCormick also failed to provide Mr. Jones with a copy of the final order of the circuit court. The record indicates that because of the lack of communication and a misunderstanding regarding additional fees, exceptions to the recommended decision were not filed by Mr. McCormick. Mr. Jones was forced to retain other counsel to seek modification of the divorce decree.

Mr. Jones lodged a complaint against Mr. McCormick because of his failure to timely communicate with him on the status of the divorce proceeding. ODC first contacted Mr.

---

1. This case was heard by a Hearing Panel Sub-committee of the Board.

McCormick regarding the complaint by letter dated December 13, 1989. In a letter dated April 18, 1990, Mr. McCormick informed ODC that he would respond to the complaint by April 23, 1990. Mr. McCormick did not file a response until January 3, 1992, shortly after being warned by ODC that a subpoena would be issued against him.

The Board determined that Mr. McCormick's failure to timely communicate with Mr. Jones constituted a violation of Rule 1.4(a) of the Rules of Professional Conduct.[2] Further, the Board determined that his failure to respond to ODC's request for information was a violation of Rule 8.1(b) of the Rules of Professional Conduct.[3]

The second complaint against Mr. McCormick stemmed from his representation of Dr. Mohammad Shafi in a suit to set aside a foreclosure sale. Mr. McCormick was required to draw up a release of claims against one of the parties in the litigation. The release was not timely obtained, resulting in a settlement check expiring and having to be reissued. Additionally, there was a finding that Mr. McCormick failed to adequately communicate with Dr. Shafi. The Board found the conduct of Mr. McCormick's failure to adequately communicate with Dr. Shafi violated Rule 1.4(a). The Board further decided that his failure to timely draft the release of claims violated Rule 1.3.[4]

The third complaint involved a client, Mr. Arnold, who is now deceased. The allegations in this matter concerned Mr. McCormick's failure to return phone calls. The Board found his conduct violated Rule 1.4(a).

2. Rule 1.4(a) provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

3. Rule 8.1(b) provides in relevant part:

[A] lawyer in connection ... with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]

4. Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

5. Rule 1.7(a) provides in relevant part:

The fourth complaint involved Mr. McCormick's representation of William J. Patton in a divorce proceeding. Mr. Patton's wife was not represented by counsel in the divorce. Mr. McCormick filed a settlement agreement for the parties and drafted the wife's answer to the complaint for divorce. The Board found that Mr. McCormick's conduct in preparing an answer for the wife violated Rule 1.7(a)[5] and Rule 4.3.[6]

The fifth complaint against Mr. McCormick involved his representation of Frank W. Byrd in a personal injury action. During representation of Mr. Byrd, Mr. McCormick loaned Mr. Byrd $586.00 to pay personal property taxes and insurance for an automobile. Eventually, Mr. McCormick deducted the debt from settlement proceeds in Mr. Byrd's case. The Board found that Mr. McCormick's conduct in loaning money to Mr. Byrd violated Rule 1.8(e).[7]

Based upon the violations found against Mr. McCormick the Board has recommended the following sanctions: (1) a public reprimand; (2) 40 hours of community service to be performed over an 18 month period (which involves volunteering to answer telephones for the Lawyer Information Service); and (3) assess the costs of this proceeding against Mr. McCormick in the amount of $425.20.

## II.

We begin by noting the standard of review applicable in this case. We pointed out in syllabus point 3 of *Lawyer Disciplin-*

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client[.]

6. Rule 4.3 provides:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

7. Rule 1.8(e) provides in relevant part:

(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated ligation[.]

*ary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995) that:

' "A de novo standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. pt. 3, *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994).' Syllabus Point 2, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995).

*See* Syl. Pt. 2, *Committee on Legal Ethics of the West Virginia State Bar v. Keenan,* 189 W.Va. 37, 427 S.E.2d 471 (1993) (" 'Absent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the [Board] ... are to be given substantial consideration.' Syllabus Point 3, in part, *In re Brown,* 166 W.Va. 226, 273 S.E.2d 567 (1980)"). Notwithstanding the posture in which we review disciplinary proceedings, we have consistently affirmed that " ' "[t]his Court is the final arbiter of legal ethic problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Point 3, *Committee on Legal Ethics v. Blair,* [174] W.Va. [494] [174 W.Va. 494], 327 S.E.2d 671 (1984).' Syl. pt. 1, *Committee on Legal Ethics v. Charonis,* 184 W.Va. 268, 400 S.E.2d 276 (1990). Syl. pt. 1, *Committee on Legal Ethics v. Ikner,* 190 W.Va. 433, 438 S.E.2d 613 (1993)." Syl. pt. 7, *Committee on Legal Ethics v. Karl,* 192 W.Va. 23, 449 S.E.2d 277 (1994).

■ We have has previously indicated that " '[t]he [Rules of Professional Conduct] state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.' Syllabus Point 3, *Committee on Legal Ethics v. Tatterson,* 173 W.Va. 613, 319 S.E.2d 381 (1984)." Syllabus Point 9, *Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993). In syllabus point 1 of *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995) we held, in part, that "Rule 3.7 of the Rules of Lawyer Disciplinary Procedure ... requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence." This Court said in syllabus point 2 of *Committee on Legal Ethics of the West Virginia State Bar v. White,* 189 W.Va. 135, 428 S.E.2d 556 (1993) that

'[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987).' Syllabus Point 5, *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989).

■ In the instant proceeding both parties urge this Court to adopt the recommendations of the Board. Our review of the record fortunately indicates that the actual harm to clients by Mr. McCormick's conduct was minimal under the circumstances. Mr. Jones was able to challenge aspects of the divorce decree by petition for modification. Dr. Shafi experienced inconvenience, but did not suffer any monetary loss. It appears that Mr. Arnold was in the process of firing Mr. McCormick and had time prior to his death to retain new counsel. Mr. Byrd did not sustain any harm from the loan made to him or the method in which he paid Mr. McCormick. Ms. Patton was able to eventually enter into a different settlement arrangement with her former spouse.

The parties point out several other types of mitigating factors in this case. Mr. McCormick has reduced the number of cases he accepts. The frequency of complaints against him have decreased substantially. Mr. McCormick has undergone a three year period of supervision with his partner, from February 1994 to December 31, 1996. Regu-

lar reports on the supervision have been forthcoming.

### III.

For the foregoing reasons, this Court finds that Mr. McCormick violated the Rules of Professional Conduct as stipulated to and discussed herein. We, therefore, order that Mr. McCormick be publicly reprimanded, perform 40 hours of community service as indicated herein, and pay the costs of this proceeding in the amount of $425.20.

Public reprimand, community service, and payment of costs.